[No. B225422. Second Dist., Div. Seven. June 22, 2011.]

AVALONBAY COMMUNITIES, INC., Plaintiff and Appellant, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Gangloff, Gangloff & Pool and Robert A. Pool for Plaintiff and Appellant.

Andrea Sheridan Ordin, County Counsel, and Richard Girgado, Deputy County Counsel, for Defendants and Respondents.

OPINION

ZELON, J.—

## INTRODUCTION

Appellant AvalonBay Communities, Inc., was assessed a 10 percent tax penalty after submitting a delinquent property tax payment. Avalon requested

that the Los Angeles County Tax Collector (Tax Collector) cancel the penalty under Revenue and Taxation Code section 4985.2 because the late payment was the result of an inadvertent employee error. The Tax Collector denied the request.

Avalon filed a petition for writ of mandate asserting that the Tax Collector had a mandatory duty to cancel the penalty pursuant to section 4985.2. Alternatively, the petition argued that Avalon was entitled to an evidentiary hearing before a neutral arbiter to determine whether it was entitled to cancellation.

The trial court held that section 4985.2 only permits the cancellation of a tax penalty if the delinquent payment was caused by an act outside the taxpayer's control. The court further concluded that Avalon could not make such a showing because it admitted the late payment was caused by an employee error. The court also denied Avalon's request for an administrative hearing, but ordered the Tax Collector to "issue an objective, written procedure by which the Tax Collector evaluates the penalty cancellation claims under section 4985.2."

On appeal, Avalon again asserts that, pursuant to section 4985.2, the Tax Collector was required to cancel its delinquent tax penalty or, alternatively, to provide an administrative evidentiary hearing before a neutral arbiter. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Avalon's Delinquent Property Tax Payment*

Under the Revenue and Taxation Code,[1] California taxpayers are permitted to submit property taxes to the county Tax Collector in two semiannual installments. The first installment is "due and payable" on November 1 of each fiscal tax year, and is considered "delinquent" if the payment is not received by 5:00 p.m. on December 10.[2] (§§ 2605, 2617.) The second installment is "due and payable" on February 1 of each fiscal tax year and is considered delinquent if the payment is not received by 5:00 p.m. on April 10. (§§ 2606, 2618.) Any delinquent property tax payment is automatically subject to a 10 percent penalty. (§§ 2617, 2618.)

---

[1] All further statutory citations are to the Revenue and Taxation Code unless otherwise noted.

[2] The California fiscal year begins on July 1 and ends the following June 30. (See *Singer Co. v. County of Kings* (1975) 46 Cal.App.3d 852, 865, fn. 1 [121 Cal.Rptr. 398].)

In November of 2005, AvalonBay Communities, Inc., received its 2005–2006 property tax bill from Los Angeles County.[3] Avalon paid the first installment on or before December 10. On March 23, 2006, the company sent a letter notifying the county Tax Collector that it intended to wire the second installment of its property tax, which was approximately $2.1 million, on April 6, 2006. The same day the letter was sent, Avalon prepared an internal "Funds Transfer Request" (FTR) specifying that $2.1 million should be wired to the Tax Collector on April 6, 2006. Avalon's tax manager and controller approved the FTR, and then forwarded it to the cash management department (CMD), which was supposed to process the request.

Avalon's CMD manager was responsible for issuing the wire payment and ensuring that the payment was made on the appropriate date. Although the CMD manager received the approved FTR on or around April 3, she "unintentionally and inadvertently neglected" to process the wire payment before April 10. When the CMD manager discovered that the FTR had not been processed, she "promptly disclosed her mistake to her superiors" and "proceeded to complete" the wire transfer on April 12, 2006.

According to Avalon, the CMD analyst, who served as the CMD manager's assistant, was partially responsible for the "inadvertent late payment." The CMD manager "traditionally relied on her [analyst] to verify that all transaction payments by that department were completed when scheduled." However, in "the March-to-April 2006 time frame," Avalon hired a new CMD analyst to replace the manager's former assistant. "In April of 2006, that new employee was not yet sufficiently conversant with all department procedures, and was unaware that the [wire payment] . . . was missed." As a result, the newly hired analyst failed to inform the manager about the unprocessed payment.

Following its late payment, Avalon amended its accounting systems to add a "real-time display" that allows the CMD staff and other designated employees to view all pending wire requests on a daily basis. Avalon adopted these corrective measures to "prevent such [payment] . . . mistakes in the future."

## B.  Avalon's Tax Penalty and Request for Cancellation

The county Tax Collector notified Avalon that it had been assessed a 10 percent penalty totaling approximately $215,000 because its second property tax installment was submitted after April 10. On June 2, 2006, Avalon requested that the Tax Collector cancel the penalty pursuant to section 4985.2

---

[3] The factual summary regarding Avalon's delinquent property tax payment is based on statements in Avalon's second amended petition for writ of mandate and its memorandum of points and authorities in support of petition for writ of mandate.

because the "late payment was . . . inadvertent." Avalon explained that, "[d]ue to an internal glitch in our electronic funds wiring authorization process, the [property tax funds] were not released until April 11, 2006. At the same time that this authorization process failed, a new employee was being trained for a position that may have caught this mistake."

After reviewing Avalon's request, the Tax Collector determined that the delinquent payment "was solely the result of employee error," which was insufficient to "support penalty cancellation under . . . section 4985.2(a)." On September 29, 2006, the Tax Collector issued a letter informing Avalon that its cancellation request had been denied. The letter began by describing the procedures the Tax Collector's office followed when evaluating penalty cancellation requests: "Requests for cancellation of penalties assessed on delinquent property taxes . . . are typically made in writing by the assessee and initially reviewed by staff. Under some circumstances (*e.g.*, a request based on a check lost in the mail, or a request based on hospitalization) we may require additional information and or documentation. My staff is authorized to rule on cancellation requests in certain routine cases, and a staff denial may be appealed to me for final disposition. Requests involving unusual facts are reviewed and determined by me personally." The letter did not explain why Avalon's cancellation request had been denied, stating only that "a 10% delinquency penalty attached by operation of law and your request for penalty cancellation under [section] 4985.2 is denied." The Tax Collector informed Avalon that if it wanted to challenge the penalty, it was required to file a refund claim with the Los Angeles County Board of Supervisors.

On June 29, 2007, Avalon submitted a tax refund claim to the board of supervisors. Although Avalon acknowledged that a "change in company personnel" had contributed to the late tax payment, it also argued that the error was a result of Los Angeles County's imposition of the "EFT [(electronic funds transfer)] payment method," which Avalon described as "relatively new to the company and . . . very complex." Avalon contended that "[a]s the taxpayer has no say or control over the payment method required by the County, the penalty should be abated in this instance."

The board denied the request and notified Avalon that it had six months to seek judicial review of its decision. (See § 5141.)

C. *Avalon's Petition for Writ of Mandate*

On March 7, 2008, Avalon filed a petition for writ of mandate under Code of Civil Procedure section 1085 alleging that the Tax Collector "failed in the mandatory ministerial duty described in Section 4985.2[] to cancel the

[delinquent tax] Penalty."[4] The petition acknowledged that the late payment was the result of an "inadvertent" employee error, but argued that the company was "prepared to establish that" the error was due to "circumstances beyond Avalon's control." The petition also asserted that the Tax Collector was required to issue "written policy and procedures" describing the manner in which it evaluates tax cancellation requests and provide an administrative evidentiary hearing before a "neutral arbiter" to determine whether cancellation was appropriate under section 4985.2.

In May 2009, Avalon filed a memorandum in support of its petition for writ of mandate. Although Avalon admitted that its late payment was the result of "ordinary neglect and mistaken inadvertence," it argued that section 4985.2 required cancellation unless the evidence showed the taxpayer had acted with "willful neglect," which Avalon described as "something more than mere 'negligence.' "

Alternatively, Avalon argued that regardless of what standard of negligence applied, the company could not be held responsible for errors committed by its employees, explaining: "Avalon, not its . . . manager or its employees, is the taxpayer who incurred the [penalty] . . . . Plainly Avalon . . . cannot possibly prevent ordinary negligence on the part of its employees." Avalon contended that requiring an employer to pay a tax penalty where the delinquency was the result of an employee's mistake would "amount to an absurdity" because it would "impose . . . an unattainable standard of care."

The trial court heard the petition on June 19, 2009, and rejected Avalon's interpretation of the statute. The court explained that although the language of section 4985.2 was redundant, the statute clearly required "a lack of negligence, ordinary negligence by the taxpayer in order for the penalty cancellation to occur." The court further explained that the statute was intended to apply where "some independent force or reason" caused the tax payment to be late, adding that "negligent conduct—oops, forgot to make a payment, is categorically not going to meet the test."

In a subsequently issued written order, the court held that section "4985.2 must be interpreted to mean that a penalty cancelation for a late payment must be supported by reasonable cause, meaning the late payment was caused by circumstances beyond the taxpayer's control, and not due to its own negligence." Because "Avalon was clearly negligent," it was "not entitled to the penalty cancellation."

---

[4] Our summary of Avalon's petition is based on the second amended petition for writ of mandate, which was filed October 15, 2008, and served as the operative pleading.

The trial court also ruled that the due process clause did not require the Tax Collector to provide an administrative hearing on every tax penalty cancellation request: "The Tax Collector assesses more than 2.3 million parcels of land in the County, and mailed 2.3 million property tax bills in 2005–06. . . . [¶] . . . In light of the volume of property tax bills he handles, the burden on the Tax Collector of a formal hearing would be considerable. The Tax Collector must be able to review a taxpayer's section 4985.2 claim informally. This can occur through the process of a taxpayer making a written request supported by evidence and the Tax Collector making an informal decision. To satisfy due process, however, the Tax Collector's finding must be supported by an explanation so that the taxpayer may determine whether, and upon what basis, to review the decision." The court concluded that although the Tax Collector's letter denying Avalon's cancellation request did not provide a sufficient explanation for its decision, the undisputed evidence showed Avalon was not entitled to cancellation under the statute. Therefore, there was no reason to order the Tax Collector to provide an explanation.

The court also ruled that the Tax Collector was not required to issue "a formal policy" explaining how his staff made tax cancellation decisions. According to the court, "[i]t is enough that section 4985.2 sets the standard for the Tax Collector's decision, the taxpayer can determine from the decision what the analytical route was for denial of his or her claim, and the Tax Collector makes all final decisions where the taxpayer is not satisfied."

However, the trial court further concluded that the Tax Collector was required to make available to the public "objective, written procedures" explaining the appeal process "by which a taxpayer not satisfied with a staff ruling may have the issue reviewed by the Tax Collector personally."

The court issued an order granting the writ to require the Tax Collector to issue a written policy describing its appeal procedure, but denied the petition "[i]n all other respects." Avalon filed a timely appeal.

## DISCUSSION

On appeal, Avalon argues that (1) the trial court erred in concluding that section 4985.2 precludes cancellation if a delinquent tax payment was caused by the negligent acts of the taxpayer's employees, and (2) the judgment must be reversed because Avalon was entitled to either a jury trial or an administrative hearing before a neutral arbiter.

### A. *Standard of Review*

"Under Code of Civil Procedure section 1085, subdivision (a), the trial court may issue a writ of mandate 'to any . . . person . . . to compel the

performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such . . . board, or person.' In reviewing a judgment granting a peremptory writ of traditional mandate under this section, we apply the substantial evidence test to the court's factual findings, but independently review its findings on legal issues. [Citation.] The interpretation of a statute is a legal issue subject to de novo review. [Citation.]" (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1491 [96 Cal.Rptr.3d 900].)

### B. *Avalon Is Not Entitled to a Cancellation Under Section 4985.2*

#### 1. *Summary of applicable tax provisions*

■ Under section 2618, a taxpayer is subject to an automatic 10 percent "delinquent penalty" if the "second half of taxes on real property" is received after April 10. However, section 4985.2 states, in relevant part, that the Tax Collector "may" cancel "[a]ny penalty . . . resulting from tax delinquency . . . upon a finding of any of the following:"

"(a) Failure to make a timely payment is due to reasonable cause and circumstances beyond the taxpayer's control, and occurred notwithstanding the exercise of ordinary care in the absence of willful neglect . . . .

"(b) There was an inadvertent error in the amount of payment made by the taxpayer, provided the principal payment for the proper amount of the tax due is made within 10 days after the notice of shortage is mailed by the tax collector. . . ." Section 4985.2 was "enacted simply to authorize cancellation of penalties under specific circumstances, because prior to its enactment, there was no authority for such cancellation even under the very equitable circumstances addressed in subdivisions (a) and (b)." (*People ex rel. Strumpfer v. Westoaks Investment #27* (2006) 139 Cal.App.4th 1038, 1051 [43 Cal.Rptr.3d 548] (*Strumpfer*).)

■ Although section 4985.2 states that the Tax Collector "may" cancel a delinquency penalty under the circumstances described in subdivisions (a) and (b), the statute has been interpreted as establishing a mandatory duty to cancel a penalty if the taxpayer establishes the necessary factual predicates:

"[S]ubdivisions (a) and (b) of section 4985.2 [do not] give the . . . tax collector discretion to deny cancellation of penalties if and when the taxpayer's proof has established the factual predicates set out in subdivisions (a) and (b). If the taxpayer presents such conclusive proof but the official refuses to

make the corresponding subdivision (a) or (b) finding, or if the corresponding finding is made but the official then refuses to exercise the authority granted by section 4985.2 to cancel the penalties, that would be grounds for a Code of Civil Procedure section 1085 petition for traditional mandamus.

"While it is true that the introductory paragraph of section 4985.2 states that penalties 'may' be cancelled rather than 'shall' be cancelled, we read such use of the word 'may' as simply providing a previously nonexistent statutory authority to effect a cancellation. Section 4985.2 should not be read to include a discretion to deny cancellation where the predicate facts have been established." (*Strumpfer, supra,* 139 Cal.App.4th at p. 1050.)

In light of the *Strumpfer* decision, the parties here agree that section 4985.2 requires the Tax Collector to cancel a tax penalty if the taxpayer establishes the factual predicates described in either subdivision (a) or (b). They disagree, however, as to whether Avalon has made that showing.

2.  *Avalon is not entitled to cancellation under section 4985.2, subdivision (a)*

Avalon argues that the Tax Collector was required to cancel the penalty under section 4985.2, subdivision (a) because (1) there is no evidence that the company acted with willful negligence, and (2) the Company cannot be held responsible for negligent acts committed by its own employees.

a.  *Avalon has not satisfied the requirements of subdivision (a) because its late payment was caused by the negligent acts of its employees*

Avalon argues that the trial court erred in ruling that "ordinary negligence" is sufficient to preclude cancellation of a delinquent tax penalty under section 4985.2, subdivision (a). As stated in Avalon's brief, "Section 4985.2(a) requires a taxpayer to establish three elements: 1) reasonable cause; 2) circumstances beyond the taxpayer's control; and 3) ordinary care in the absence of willful neglect."[5]

Avalon contends that because the third element references "ordinary care in the absence of willful neglect," a taxpayer is entitled to cancellation unless the facts establish the taxpayer "acted with a reckless indifference to . . . timely pay its taxes, or intentionally failed to take the steps necessary to pay

---

[5] Subdivision (a) of section 4985.2 includes a fourth element that requires the taxpayer to pay "the principal payment for the proper amount of the tax due . . . no later than June 30 of the fourth fiscal year following the fiscal year in which the tax became delinquent." That element, however, is not at issue here.

its taxes by the deadline." Thus, according to Avalon, the Tax Collector must cancel its penalty because the undisputed evidence shows that its delinquent payment was the result of an inadvertent act of ordinary negligence.

> i. *Avalon's argument is precluded by* ZC Real Estate Tax Solutions Ltd. v. Ford *(2010) 191 Cal.App.4th 378 [119 Cal.Rptr.3d 85]*

In *ZC Real Estate Tax Solutions Ltd. v. Ford* (2010) 191 Cal.App.4th 378 [119 Cal.Rptr.3d 85] (*ZC Real Estate*), the Fifth District held that section 4985.2, subdivision (a) does not permit cancellation of a tax penalty if the delinquent payment was caused by the taxpayer's own mistake. The petitioner in *ZC Real Estate* was a tax services company that paid its clients' property taxes. (191 Cal.App.4th at p. 381.) On December 4, 2008, an employee of ZC Real Estate inadvertently mailed several property tax checks to the wrong county tax collector; the checks were intended for the Stanislaus County Tax Collector, but the envelope was addressed to the Office of the San Francisco Tax Collector. On December 12, the petitioner discovered the error and immediately wired the property tax payments to Stanislaus's tax collector.

After receiving the payment, Stanislaus informed ZC Real Estate that its "taxes were delinquent after December 10, [and] a statutory penalty of 10 percent of the delinquency had attached . . . ." (*ZC Real Estate, supra*, 191 Cal.App.4th at p. 381.) ZC Real Estate filed a petition for writ of mandate to compel Stanislaus County to cancel the tax penalty pursuant to section 4985.2, subdivision (a). The trial court denied the petition.

On appeal, ZC Real Estate argued that subdivision (a) of section 4985.2 permitted the court to "grant relief from a [delinquent tax] penalty when the court concludes the taxpayer has made an 'innocent or trivial' mistake that caused the delinquency." (*ZC Real Estate, supra*, 191 Cal.App.4th at p. 384.) ZC Real Estate further contended that cancellation was required because the "evidence d[id] not suggest 'willful neglect' on its part." (*Ibid.*)

Although the appellate court agreed there was no evidence ZC Real Estate's acts constituted willful neglect, the court rejected the petitioner's interpretation of subdivision (a) of section 4985.2, explaining "[t]hat simply is not the standard established by the statute." (*ZC Real Estate, supra*, 191 Cal.App.4th at p. 384.) The court concluded that while the third element of the statute referenced willful neglect, the second element plainly required that the late payment must be due to "circumstances beyond the taxpayer's control." (*Ibid.*) The appellate court ruled that ZC Real Estate could not meet that requirement because the evidence showed "the delinquency was caused

by appellant's failure to send the payment to the correct address, a circumstance clearly within appellant's control." (*Id.* at p. 385.)

In addition, the court noted that ZC Real Estate had failed to put in place any control mechanisms that might have caught the error, which was another contributory factor within the company's control: "[A]ppellant's evidence does not establish that it had any procedures in place even to keep track of actual deliveries by its delivery service (such a control mechanism clearly would have shown the absence of any delivery to Stanislaus County, even if it might not have shown where the checks had been sent). Whether appellant tracked delivery of its packages against a control list, or had a system for confirming receipt of payment by telephone, or had some different control mechanism, the creation and implementation of such a system clearly is within appellant's control. Appellant's failure to discover its error in a timely fashion is . . . a function of its own failure to set up a system to make such discoveries." (*ZC Real Estate, supra,* 191 Cal.App.4th at p. 385.)

■ The facts of this case cannot be meaningfully distinguished from *ZC Real Estate.* Avalon admits that its delinquent payment was the result of a mistake made by its own employees. Specifically, Avalon's CMD manager overlooked an FTR that had been authorized by upper management. The manager's assistant, who was supposed to verify that all approved fund requests were processed in a timely manner, was a newly hired employee whose inexperience directly contributed to the late payment. Moreover, the company's computer accounting system had no control mechanism in place to notify the CMD manager of outstanding fund transfer requests. Thus, as in *ZC Real Estate,* the factors that caused the delinquent payment—employee error and lack of any control mechanism—were clearly within Avalon's control and, as a result, section 4985.2, subdivision (a) is inapplicable.

ii. *Avalon's attempts to distinguish* ZC Real Estate *are unpersuasive*

Avalon, however, argues that *ZC Real Estate* is distinguishable on two grounds. First, it asserts that its employees "never dispatched checks . . . via courier . . . to the wrong county"; rather, they made the payment through "an Electronic Fund Transfer . . . regime, which necessarily involved mere fallible human beings (Avalon's employees) who interact with an unforgiving electronic computerized machine—whose 'language' is not English, but binary code . . . . Such a system invites unforeseen error." Contrary to Avalon's assertions, the undisputed evidence shows that the late payment was not caused by any complexity in the EFT (electronic funds transfer) payment system. Rather, the delinquency occurred because the CMD manager overlooked an FTR that directed her to release the property tax payment on

April 6. We see no meaningful difference between inadvertently mislabeling an envelope and inadvertently overlooking a request to wire funds by a specified date. In both instances, the error was plainly the result of acts within the control of the taxpayer's employees.[6]

Second, Avalon argues that, unlike the petitioner in *ZC Real Estate*, the evidence demonstrates that it has taken corrective measures "to prevent future errors in tax payment." Specifically, Avalon has amended its accounting system to add a "real-time display" that shows the CMD manager and other accounting personnel any "pending EFT transactions." Avalon's after-the-fact amendment of its computer system does not alter our analysis. If anything, Avalon's assertion that it has now established proper controls only highlights that, as in *ZC Real Estate*, the absence of such controls was a contributing factor to the late payment. Moreover, Avalon's "corrective measures" do not change the fact that the delinquent payment here was caused by the negligent act of its own employee. *ZC Real Estate* makes clear that, under such circumstances, the taxpayer is not entitled to cancellation pursuant to section 4985.2, subdivision (a).

### iii. *We agree with* ZC Real Estate*'s analysis*

Avalon also argues that, even if *ZC Real Estate* cannot be distinguished from this case, the Fifth District's decision "misconstrued" the meaning of section 4985.2, subdivision (a), and "urges" us to adopt a proper interpretation. Avalon contends that interpreting subdivision (a) as precluding cancellation for mere accidents "renders the entire statute meaningless. . . . No one could ever qualify for a cancellation . . . because the unintentional failure to timely pay taxes necessarily involves a mistake." Although subdivision (a) is not a model of clarity, we agree with *ZC Real Estate*'s conclusion that, when considered as a whole, the statute clearly precludes cancellation if the failure to make a timely payment was due to circumstances within the taxpayer's control. Avalon's contention that such an interpretation renders the statute a nullity is based on the false assumption that a late tax payment is always the result of a taxpayer mistake. Any number of factors could cause a payment to be late that have nothing to do with the taxpayer's conduct. For example, the Tax Collector might send a property tax bill to the wrong address, or a tax

---

[6] We also reject Avalon's contention that Los Angeles County's "decision to require Avalon to use the complicated and complex EFT system to pays [*sic*] its taxes was certainly a circumstance beyond Avalon's control. It was this requirement that frustrated Avalon's good-faith attempt to pay its taxes by the April 10 deadline." As explained above, the "EFT system" did not cause the late payment. Instead, Avalon admits that an employee simply failed to process a wire payment on a specified date. Moreover, Avalon acknowledges that it had been using the EFT payment system since at least 2001 and had never experienced any problems.

payment might get lost in the mail. As explained by the trial court, subdivision (a) was intended to provide relief when such "outside forces or reasons" caused the delinquency.[7]

### b. *The acts of Avalon's employees were within the company's control*

Avalon next argues that, even if we accept *ZC Real Estate*'s holding, the delinquent payment in this case was "due to circumstances beyond the taxpayer's control" because Avalon's employee, and not Avalon, "made [the] mistake." In other words, Avalon argues that, for the purposes of section 4985.2, subdivision (a), its "employee's negligence was . . . a circumstance beyond Avalon's control."

■ Avalon's contention that a corporate employer cannot be held responsible for its employees' mistakes is unsupported by any legal citation and we find no merit in it. A "corporation is an artificial person" (*Acco Contractors, Inc. v. McNamara & Peepe Lumber Co.* (1976) 63 Cal.App.3d 292, 295–296 [133 Cal.Rptr. 717] (*Acco*)) that "can act only through its employees." (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1326 [58 Cal.Rptr.2d 308] (*Fiol*); see also *Acco, supra,* 63 Cal.App.3d at pp. 295–296 [corporation "can only function through its agents"]; *Dearborn v. Grand Lodge, A. O. U. W.* (1902) 138 Cal. 658, 663 [72 P. 154] ["The defendant is a corporation, an artificial person. . . . It acts through its members, or officers, or agents."].) Therefore, where "an employee [is] acting on behalf of the [corporation,] . . . there is in law only a single actor." (*Fiol, supra,* 50 Cal.App.4th at p. 1326.)

We find no basis to conclude that, for the purposes of section 4985.2, the Legislature intended to depart from these well-established principles. (See

---

[7] Shortly after briefing and oral argument were completed in this matter, the Fourth Appellate District issued *First American Commercial Real Estate Services, Inc. v. County of San Diego* (2011) 196 Cal.App.4th 218 [126 Cal.Rptr.3d 630]. The plaintiff in *First American* failed to wire the second installment of its property tax bill before April 10 because of an "internal error in formatting a spreadsheet used in making . . . wire transfers." (*Id.* at p. 222.) After the county imposed a 10 percent delinquency penalty, First American filed a petition for writ of mandate arguing that it was entitled to cancellation of the penalty under section 4985.2, subdivision (a). The appellate court upheld the penalty, ruling that plaintiff's mistake in "formatting a spreadsheet" was not a "circumstance beyond the taxpayer's control." (196 Cal.App.4th at pp. 226–227.) In reaching its holding, the court rejected the plaintiff's contention that "a circumstance is beyond the taxpayer's control anytime that a circumstance arises '*despite* the taxpayer's exercise of ordinary care in the absence of willful neglect.' " (*Id.* at p. 227.) Instead, the court "follow[ed] *ZC Real Estate*['s]" holding that section 4985.2, subdivision (a) does not apply where a late payment is caused by inadvertent "clerical errors." (196 Cal.App.4th at p. 227.) *First American* provides further support for our conclusion that where, as here, a late tax payment was the result of an avoidable mistake committed by the taxpayer, section 4985.2, subdivision (a) provides no ground for relief.

generally *Acco, supra,* 63 Cal.App.3d at pp. 295–296 ["A corporation is an artificial person [citation], who can only function through its agents [citation]. Thus, the phrase 'his own labor' refers to the labor of the corporation's agents, which in this case, is its employees."].) Indeed, if employees' acts were deemed to be outside the control of the corporation, it is difficult to understand how any act would ever be within the corporation's control.

### 3. *Avalon is not entitled to cancellation under section 4985.2, subdivision (b)*

■ Avalon also contends that it is entitled to cancellation under section 4985.2, subdivision (b), which applies where "[t]here was an inadvertent error in the amount of payment made by the taxpayer, provided the principal payment for the proper amount of the tax due is made within 10 days after the notice of shortage is mailed by the tax collector." The language of subdivision (b) makes clear that a delinquent tax penalty may be cancelled where the taxpayer accidentally paid less than the full amount of its tax obligation, and then repaid the "shortage" within 10 days of receiving notice of its error. The section has no application where the taxpayer simply submits an untimely payment.

Avalon admits it did not pay any portion of the second installment of its property tax bill, which was due February 1 and became delinquent April 10. (See §§ 2606, 2618.) However, it argues that subdivision (b) still applies because the company previously paid the first installment of its 2005–2006 property tax bill, which was due on November 1. (See § 2605.) "Thus," according to Avalon, "this is not a case where Avalon failed to pay any tax at all; rather there was an inadvertent error in the amount of payment made by Avalon that resulted in payment of only 50% of the tax due."

The structure and language of the Revenue and Taxation Code indicate that section 4985.2, subdivision (b) has no application under the circumstances of this case. The code divides the payment of annual property tax into two installments. Section 2605 states "The following taxes on the secured roll are due and payable November 1: [¶] . . . [¶] (b) Half the taxes on real property . . ."; section 2606 states that "[t]he second half of taxes on real property on the secured roll is due and payable February 1." The code also contains separate sections that describe when each property tax installment is deemed delinquent, and therefore subject to a delinquency penalty. Section 2617 states "[a]ll taxes due November 1 . . . are delinquent . . . on December 10, and thereafter a delinquent penalty of 10 percent attaches to them"; section 2618 states "[t]he second half of taxes on real property . . . is delinquent . . . on April 10, and thereafter a delinquent penalty of 10 percent attaches to it."

■    The tax code therefore makes clear that a separate 10 percent penalty may attach to both the first and second installment of a taxpayer's annual property tax obligation. Section 4985.2, in turn, describes the circumstances under which any "penalty . . . resulting from tax delinquency may be canceled." In this case, the relevant tax penalty attached under section 2618, which related solely to Avalon's failure to timely pay the second installment of its property tax. Therefore, subdivision (b) of section 4985.2 would only be relevant if Avalon could show that it paid some portion of the second property tax installment prior to April 10, which it admittedly failed to do. The fact that Avalon paid its first installment has no relevance to determining whether subdivision (b) applies here.

### C.    *Avalon Is Not Entitled to Reversal Based on Alleged Procedural Errors*

Finally, Avalon argues that the judgment must be reversed as the result of various procedural errors. First, Avalon contends that the trial court abused its discretion by failing to appoint a jury pursuant to Code of Civil Procedure section 1090. Although "[t]here is no right to a jury trial in a mandamus proceeding . . . ," section 1090 permits the trial court "to grant one if there is an issue of fact essential to resolution of the case." (*Valtz v. Penta Investment Corp.* (1983) 139 Cal.App.3d 803, 810 [188 Cal.Rptr. 922] (*Valtz*).)

The determinative facts in this case are not disputed: Avalon concedes that its employees committed negligent acts that caused its second property tax installment to be received after April 10. As explained above, these admitted facts demonstrate that Avalon is not entitled to relief under section 4985.2. Accordingly, "[t]here was no question of fact to warrant a jury trial." (*Valtz, supra,* 139 Cal.App.3d at p. 810 [§ 1090 inapplicable where facts necessary to satisfy statute were not in dispute]; see *Reber v. Superior Court* (1961) 189 Cal.App.2d 622, 624 [11 Cal.Rptr. 534] [§ 1090 does not require a trial where "[n]o genuine factual issue is tendered by the answer"].)

Avalon next argues that the due process clause required the Tax Collector to provide an administrative hearing before a neutral arbiter to determine whether the company satisfied the factual predicates described in section 4985.2, subdivision (a). However, the undisputed facts demonstrate, as a matter of law, that Avalon is not entitled to a cancellation under section 4985.2. Therefore, we need not determine whether Avalon was entitled to an administrative hearing because, even if it had been, the failure to provide one was necessarily harmless. (See generally *Hinrichs v. County of Orange* (2004) 125 Cal.App.4th 921, 928 [23 Cal.Rptr.3d 186] ["[P]rocedural due process violations, even if proved, are subject to a harmless error analysis."].)

## DISPOSITION

The trial court's judgment is affirmed. Respondents are to recover their costs on appeal.

Woods, Acting P. J., and Jackson, J., concurred.

A petition for a rehearing was denied July 21, 2011, and the opinion was modified to read as printed above.