[No. G043523. Fourth Dist., Div. Three. Dec. 14, 2011.]

GLENN PROVOST, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

1290

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

---

**COUNSEL**

Law Offices of James K. Autrey, James K. Autrey; Law Offices of Michael F. Baltaxe and Michael F. Baltaxe for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton, Richard A. Paul, Sandra L. McDonough and Michael J. Etchepare for Defendants and Respondents.

---

**OPINION**

**RYLAARSDAM, Acting P. J.**—Plaintiff Glenn Provost appeals from a judgment entered pursuant to a stipulation for settlement reached at mediation with defendant Regents of the University of California (Regents). He asserts the stipulation was not binding for a host of reasons, including that it was not properly executed by Regents or executed by defendants Peter H. Breen and Cindy Anderson at all, conditions precedent to its finality were not satisfied, it did not contain all material terms, it was obtained by duress and coercion, evidence on which he might have relied in considering whether to settle was fraudulently concealed, and it was not enforceable because protected by mediation confidentiality. None of these arguments persuade and we affirm the judgment.

We grant Regents's request to take judicial notice of its bylaw 21. (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 822, fn. 7 [67 Cal.Rptr.3d 635].) We deny plaintiff's request for judicial notice. It was not filed with the opening brief but with an amended reply brief. We rejected the original reply brief because it exceeded the word limitation, and we reminded plaintiff he could not raise new issues or "rewrite his opening brief." His requested documents go to new issues, should have been included with the opening brief to give defendants an opportunity to respond to them, are irrelevant, or are beyond the scope of the issues presented in the appeal.

## FACTS AND PROCEDURAL HISTORY

Because this case arises out of a procedural decision the underlying facts are not generally relevant. Suffice it to say that plaintiff, who had been

employed by Regents as an anesthesiologist at the University of California Irvine Medical Center, filed a complaint under the California Whistleblower Protection Act (Gov. Code, § 8547 et seq.) against Regents, Breen, and Anderson, the latter two physicians at the medical center. Setting out several causes of action, the complaint primarily pleaded plaintiff was wrongfully terminated after he reported alleged illegal conduct by defendants. Regents filed a cross-complaint containing several causes of action, including breach of contract, intentional and negligent misrepresentation, and violation of the False Claims Act (Gov. Code, § 12650 et seq.), which alleged plaintiff failed to pay Regents sums in excess of $100,000 earned from outside employment.

The parties attended mediation in 2007 and again in 2008. Several days after the last session in April 2008 they resumed the process, which resulted in a stipulation to settle the matter (stipulated settlement), including payment of $475,000 to plaintiff and a dismissal of the complaint and cross-complaint with prejudice. The stipulated settlement incorporated the "[p]rocessing terms" of a letter of the same date prepared by defendants' counsel, which generally sets out the logistics to complete the settlement. The stipulated settlement also stated it was "[a]ll subject to approval of Regents." The stipulated settlement was signed by four people: plaintiff, one of his three lawyers, one of Regents's in-house counsel, Carolyn Yee, who had been appointed as the party representative and authorized to sign on behalf of Regents, and defendants' lawyer, Sandra McDonough. Yee had attended all of the mediation sessions as the party representative for Regents. Approximately one week later plaintiff's counsel filed a "Notice of Settlement of Entire Case." (Some capitalization omitted.)

As per the stipulated settlement, defendants' counsel prepared a settlement agreement and release (final settlement agreement), making the minor changes plaintiff's lawyer requested. In September, Regents approved the stipulated settlement and plaintiff's counsel was also advised.

In the meantime, in July plaintiff personally sent a letter to the trial judge, stating he had "just become aware of certain 'irregularities' that occurred prior to and during the mediation," i.e., threats by defendants, which were "upheld" by his own lawyer, to file criminal charges. He mentioned he had spoken to the State Bar and would like time to get "an independent legal opinion" on those issues "prior to any further processing" of the action. The trial judge replied to plaintiff, with copies to both parties' lawyers, advising he could not communicate with plaintiff personally and forwarded a copy of plaintiff's letter to the lawyers.

At a voluntary settlement conference in October, after Regents had approved the stipulated settlement, plaintiff told the court he would not sign the final settlement agreement. This was the first time defendants "received . . . definitive confirmation" plaintiff was not willing to execute the document. Plaintiff reiterated his unwillingness to sign at a subsequent mandatory settlement conference.

Regents then filed a motion to enforce the stipulated settlement under Code of Civil Procedure section 664.6 (all further statutory references are to this code unless otherwise stated), which the court denied on the ground Regents had not signed the stipulated settlement because Yee was its in-house lawyer and not a party.

Regents then filed a petition for writ of mandate in this court arguing that Yee, as its duly authorized representative, could sign the settlement and signature by an officer was not required. We issued an alternative writ requiring the order that denied the motion to be vacated and the trial court to decide the motion "on the other issues raised" or show cause why the original order was correct.

At the rehearing, the trial court granted the motion, after which a judgment, stating all claims were released, was entered. This appeal is from that judgment.

## DISCUSSION

### 1. *Introduction*

Defendants argue the opening brief should be stricken, justifiably taking exception to plaintiff's failure to provide record references in violation of California Rules of Court, rule 8.204(a)(1)(C). Although we decline to strike the brief, this should not be interpreted as approval of plaintiff's violation of the appellate rules. In addition, we will generally consider only those facts and arguments supported by adequate citations to the record.

Further, some of plaintiff's arguments are not confined to the point raised in the heading, also a violation of court rules. (Cal. Rules of Court, rule 8.204(a)(1)(B).) And many of the same arguments are repeated throughout the brief under various headings. Although we address the issues raised in the headings, we do not consider all of the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [57 Cal.Rptr.3d 363].) Moreover, once we have discussed and disposed of an issue it will not necessarily be considered again in connection with other

claims. In addition, we will not address arguments raised for the first time in the reply brief (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–766 [60 Cal.Rptr.2d 770]) or documents in plaintiff's "Reply Appendix" filed with his reply brief because defendants lacked the opportunity to respond.

### 2. *Defendants' Signatures on the Stipulated Settlement*

#### a. *Regents's Signature*

Section 664.6 declares a settlement may be enforced by motion if the "writing [is] signed by the parties." (See *Levy v. Superior Court* (1995) 10 Cal.4th 578, 586 [41 Cal.Rptr.2d 878, 896 P.2d 171].) Relying on *Levy* and *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110 [127 Cal.Rptr.2d 370], plaintiff argues the stipulated settlement is unenforceable because it was never signed by Regents, asserting Yee's signature was ineffective.

In *Levy*, lawyers for the two individual parties executed a writing settling the case. The plaintiff then refused to sign the formal settlement document and the defendant filed a motion under section 664.6 to enforce the settlement. The Supreme Court determined that, although the word "is reasonably susceptible to more than one interpretation" (*Levy v. Superior Court, supra*, 10 Cal.4th at p. 582), under the section, "parties" "means the litigants themselves, and does not include their attorneys of record" (*id.* at p. 586, fn. omitted).

In reaching this conclusion the court examined the extent of the actions a lawyer may take on behalf of a client during the pendency of litigation, noting acts "incidental to the management of a lawsuit, such as making or opposing motions, seeking continuances, or conducting discovery" do not require a client's explicit approval. (*Levy v. Superior Court, supra*, 10 Cal.4th at p. 583.) But settling a case is not incidental and thus "requires the client's knowledge and express consent. [Citation.]" (*Ibid.*) The court pointed to the well-established rule " ' "that an attorney must be specifically authorized to settle and compromise a claim, that merely on the basis of . . . employment [the lawyer] has no implied or ostensible authority to bind [the] client to a compromise settlement of pending litigation. . . ." ' [Citation.]" (*Ibid.*)

As a result, then, based on the court's interpretation of the word "party," because the settlement agreement in *Levy* was signed only by the plaintiff's lawyer and not by the plaintiff himself, it was not enforceable under section 664.6. (*Levy v. Superior Court, supra*, 10 Cal.4th at p. 586.)

In *Gauss v. GAF Corp., supra*, 103 Cal.App.4th 1110, relying on *Levy* the court refused to enforce a settlement under section 664.6 due to lack of a signature by a proper corporate representative, despite the fact the corporation had specifically designated the signatory as its " 'sole agent' " and given it " 'exclusive authority and discretion' " to settle the case. (*Gauss v. GAF Corp., supra*, 103 Cal.App.4th at pp. 1118–1119.) The court ruled that "settlements signed only by a 'claims manager,' or other agent of a party" could not be enforced under section 664.6. (*Gauss v. GAF Corp., supra*, 103 Cal.App.4th at p. 1122.) The appointed signer was an employee of an outside company the defendant had formed and contracted with to handle the multitude of mass tort actions in which it was involved. The signatory was not an officer or employee of the defendant.

In *Gauss* the defendant argued that a signature by its exclusive agent was sufficient because "a corporation can only act through its employees and agents. [Citation.]" (*Gauss v. GAF Corp., supra*, 103 Cal.App.4th at p. 1118.) The court rejected this argument, noting, "*Levy* ma[de] no such distinction." (*Ibid.*) But the rejection went to the insufficiency of a signature by an agent, not to the well-established rule that a corporation acts through its agents and employees. (*Gardner v. Jonathan Club* (1950) 35 Cal.2d 343, 348 [217 P.2d 961]; *AvalonBay Communities, Inc. v. County of Los Angeles* (2011) 197 Cal.App.4th 890, 903 [128 Cal.Rptr.3d 690].)

█ To interpret *Gauss* to preclude enforcement of a settlement under section 664.6 unless the document has been signed by a corporate officer is too narrow and also inaccurate. A careful reading of the case reveals that it contains no such requirement. Although it did mention that the settlement documents in question had not been signed by a corporate officer (*Gauss v. GAF Corp., supra*, 103 Cal.App.4th at p. 1118), what *Gauss* actually held was that the settlement was not enforceable under section 664.6 because it was not signed by an "authorized corporate representative" (*Gauss*, at p. 1120). In our case, the stipulated settlement was signed on behalf of the Regents by Yee, who was "an authorized corporate representative."

Yee was employed by Regents in the office of the general counsel and designated as the party representative by Charles Robinson, Regents's general counsel and vice-president of legal affairs. Regents's bylaw 21 provides that he is an officer and "the chief legal officer of the University," has "general charge of all legal matters pertaining to the Corporation and the University[,] . . . and . . . oversee[s] the provision of all legal services to the University." Plainly, Robinson had the authority to appoint Yee. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 889 [80 Cal.Rptr.3d 690, 188 P.3d 629] [Regents's authority " 'includes "full powers of organization and government' " " and its policies enacted " ' "as matters of internal

regulation may enjoy a status equivalent to that of state statutes" ' "].) As an employee of Regents, Yee could be designated as the party representative to execute the settlement on its behalf.

Yee's designation and action on behalf of Regents fully satisfies the rationale of *Levy*, which instructs that "[t]he litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent. [Citation.]" (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 585, fn. omitted.)

■ Regents "direct[ly] participat[ed]" with "knowledge and consent" (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 585) through Yee, its employee. She was intimately and fully familiar with the case, understood the "seriousness and finality" of settling on those terms, and settled the case within Regents's guidelines, as evidenced by its ultimate approval. Based on the unique facts of this case, Yee was in as good or better a position as anyone to best protect Regents's interests in the settlement.

Our decision should not be extended to apply to any employee of a corporation in any circumstance; obviously some would lack the appropriate qualifications. On the other hand holding that an officer, as opposed to another designated and qualified employee, must sign a settlement for it to be enforceable under section 664.6 makes no practical sense. One can hardly expect an officer of Ford Motor Company or Wal-Mart Stores, Inc., to participate in every settlement of every case, down to the smallest personal injury action, to be eligible to take advantage of the mechanism provided by section 664.6.

In *Gauss* the plaintiff made a similar argument, claiming that refusing to enforce the settlement agreement because signed only by its designated agent would substantially interfere with settlement of mass tort actions. The court rejected this assertion, pointing out that the procedure under section 664.6 was " 'not exclusive' " but " 'merely an expeditious, valid alternative . . . . [Citation.]' " (*Gauss v. GAF Corp., supra,* 103 Cal.App.4th at p. 1122.) Rather, " '[s]ettlement agreements may also be enforced by motion for summary judgment, by a separate suit in equity or by amendment of the pleadings to raise the settlement as an affirmative defense.' [Citations.]" (*Ibid.*)

But when the signer is an employee, under the circumstances present here, there is no reason why, merely by virtue of their size, large organizations or entities that are involved in a multitude of lawsuits should be deprived of access to the summary process of section 664.6. After all, it was enacted to provide "an expedient and cost effective means of enforcing a settlement agreement" and as "a valid alternative to a motion for summary judgment" and the other methods of enforcement. (*City of Fresno v. Maroot* (1987) 189 Cal.App.3d 755, 762 [234 Cal.Rptr. 353]; see also *Kilpatrick v. Beebe* (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52].) The Legislature created this procedure to benefit not only parties but also the justice system, relieving it of the burden of more time-consuming and expensive processes.

Plaintiff maintains Yee was counsel of record, thus making the stipulated settlement unenforceable under *Levy*. But Yee was not the attorney of record as to the complaint and appeared only on the cross-complaint as one of six lawyers. More importantly, the facts here are not the same as in *Levy*, where the agreement was signed only by outside counsel on behalf of the party and not by an employee of the party. Yee was not authorized to sign " 'merely by virtue of [her] retention in litigation' " as in *Levy*. (*Levy v. Superior Court, supra*, 10 Cal.4th at p. 584.) She did not bind Regents as an attorney-agent (*ibid.*; see *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [212 Cal.Rptr. 151, 696 P.2d 645]) but signed as a designated employee of the corporate party. Just because Yee happened to be an attorney should not and does not prohibit her from acting on Regents's behalf. Further, plaintiff has not cited a case holding that a settlement agreement signed in mediation by someone who is both counsel and a party cannot be enforced under section 664.6.

Finally, plaintiff argues Regents's internal policies bar not only Yee's authority to sign but also Robinson's. But he is relying on documents not in the record: they were attached to his supplemental points and authorities, which the trial court refused to consider because plaintiff had not obtained leave of the court to file them. And plaintiff does not challenge that ruling.

b. *Signature by Individual Defendants*

Plaintiff contends that even if the stipulated settlement is enforceable by Regents, the individual defendants may not enforce it because they did not sign the document. It is true the individual defendants did not sign but they are not seeking to enforce the stipulated settlement as parties to it; they did not make the motion. Rather, they are third party beneficiaries of the stipulated settlement and the judgment in their favor is valid as well.

■ As discussed above, a settlement agreement may be enforced under section 664.6 by the parties who signed it. But the statute does not require that the agreement be executed by every party to the action who benefits from it, even if indirectly, such as a third party beneficiary.

■ " 'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. [Citation.] If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract.' [Citations.] In other words, 'the doctrine presupposes that the defendant made a promise which, if performed, would have benefited the third party.' [Citation.]" (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1022 [90 Cal.Rptr.3d 453].) "It is not necessary that the contract identify the third party by name as long as such third party can show that it is one of a class of persons for whose benefit it was made. [Citation.]" (*General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 444 [15 Cal.Rptr.2d 622] [agreement that clearly released every party from liability arising out of automobile accident applied even to parties not named in document].) These rules apply to settlement agreements. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810–811 [71 Cal.Rptr.2d 265] ["legal principles which apply to contracts generally apply to settlement contracts"].)

In this case the language of the stipulated settlement demonstrates it was made for the benefit of the individual defendants. It stated, "[t]he case is settled as to *all* claims . . ." and the "*entire action* [is] dismissed [with] prejudice." (Italics added.) Performance of those acts disposes of the case against all parties, even without the signatures of the individual defendants on the stipulated settlement.

### 3. *Conditional Settlement*

Plaintiff argues the settlement agreement is not enforceable because it was conditioned upon approval by Regents and he revoked his agreement before Regents approved the settlement. The parties devote pages to this issue, primarily focusing on whether the approval requirement was a condition precedent or a condition subsequent. But we need not make such a determination because the record reflects Regents approved the settlement before plaintiff's purported revocation of his agreement.

In his opposition to the motion to enforce the settlement plaintiff stated in his declaration that sometime after the stipulated settlement was signed and sometime before July 18 he told his lawyer he "was withdrawing his consent to the 'conditional' settlement" and revoked his consent in a letter to the court in July 2008 before Regents's approval in September. But the letter to the court did not contain revocation language. It merely stated plaintiff wanted to speak to the State Bar "prior to any further processing of the case." And there is nothing in the record showing the purported oral revocation made to his lawyer was ever communicated to Regents. Rather the only evidence is that the first time Regents learned of plaintiff's revocation was at a voluntary settlement conference in October after it had approved the stipulated settlement and had communicated that information to plaintiff's counsel. Thus plaintiff's alleged revocation was ineffective.

In a similar vein plaintiff argues he revoked prior to any payment by Regents, apparently equating this to a lack of consideration. But nothing required Regents to pay before plaintiff signed the final settlement agreement.

In a related argument plaintiff cursorily asserts there was neither mutual consent nor an intent to be bound. But plaintiff failed to provide any reasoned legal analysis or authority supporting these claims and they are forfeited. (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 165 [35 Cal.Rptr.3d 745].) Even on the merits the argument fails because the parties expressed mutual consent and an intention to be bound by executing the stipulated settlement, which states it "is binding on the parties," and which Regents then formally approved. (See *Stewart v. Preston Pipeline, Inc.* (2005) 134 Cal.App.4th 1565, 1587 [36 Cal.Rptr.3d 901] ["Mutual assent to contract is based upon objective and outward manifestations of the parties . . . ."].)

## 4. *Definite and Material Terms*

◾ Plaintiff attacks the stipulated settlement on the basis the parties did not agree as to material terms. In support he reiterates arguments that we have already disposed of, including that it was subject to Regents's approval. His interpretation that the stipulated settlement was " 'not [to] be binding . . . unless . . . Regents . . . formally approved' " the final settlement agreement carries no weight. The parties' "objective and outward manifestations" control. (*Stewart v. Preston Pipeline, Inc., supra,* 134 Cal.App.4th at p. 1587.)

For the same reason plaintiff's argument he "understood" the individual defendants were not to be included since not mentioned in the stipulated settlement or present at the mediation fails. As discussed above, the all-encompassing language of the stipulated settlement objectively included them. Moreover, contrary to plaintiff's claim he did not understand the

stipulated settlement to encompass the individual defendants, shortly after agreement was reached his lawyer filed a notice stating the entire case was settled. So the objective and subjective evidence defeats plaintiff's argument.

Relying on the provision of the processing letter requiring signature by all the parties of the final settlement agreement, plaintiff argues the stipulated settlement lacked a material term because he never signed the final document. We need comment no further on the self-evident error of this argument.

Plaintiff also points to certain terms in the stipulated settlement he claims "were left undefined." A settlement is enforceable so long as it is "sufficiently certain to make the precise act which is to be done clearly ascertainable." (Civ. Code, § 3390, subd. 5.) Because this is a legal question we review it de novo. (*Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 268 [14 Cal.Rptr.3d 184].)

The stipulated settlement stated, "Regents agree to instruct designated tier of employees re non-disparagement to which [plaintiff] also agrees." Plaintiff complains that in the final settlement agreement there was no "resolution" as to the meaning of "non-disparagement." He fails, however, to properly include the final settlement agreement in the record. As noted above, although it is in an appendix plaintiff filed with his reply brief, we will not consider it. Thus, he has forfeited the claim.

But even without seeing the final settlement agreement, we discern no uncertainty in use of the word "non-disparagement." "Disparage" is defined as "speak[ing] slightingly about" and "lower[ing] in rank or reputation." (Merriam-Webster OnLine Dict. <http://www.merriam-webster.com/dictionary/disparage> [as of Dec. 14, 2011].) There is nothing to show the parties gave "non-disparagement" a technical or special meaning. Rather, it can be understood in its plain and ordinary sense and is clear. (See *Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 683 [33 Cal.Rptr.3d 853].)

Plaintiff's claim the stipulated settlement did not specify a restriction on his ability to discuss patient safety at the medical center has no merit. If it was not part of the stipulated settlement, it cannot be either material or indefinite.

■ Plaintiff also points to the portion of the stipulated settlement that states the " 'HR dept. of UC to respond to prospective employers [with] agreed upon neutral response.' " He complains the parties never agreed as to

a response acceptable to him, the specific parties in the human resources department who would handle inquiries, or how all his references would be handled. These are not material contract terms but details adjunct to the substance of the agreement. And nonmaterial terms may be negotiated after a basic agreement has been reached. (*Elite Show Services, Inc. v. Staffpro, Inc., supra,* 119 Cal.App.4th at p. 269 ["neither law nor equity requires that every term and condition of an agreement be set forth in the contract"].)

Further, according to the stipulated settlement the parties were to agree about these details. Without having the final settlement agreement properly before us to review we are unable to determine if it contained a provision dealing with these issues, and if so, whether plaintiff or his lawyer discussed the specifics with defendants' lawyer. Defendants prepared the final settlement agreement as required. If plaintiff had concerns, it was his responsibility to voice them. Instead, he attempted to revoke the stipulated settlement and refused to sign the final settlement agreement.

### 5. *Coercion and Duress*

Plaintiff asserts that the stipulated settlement cannot be enforced because he was coerced into signing it by both defendants' counsel and his own. He contends that, at the mediation, the mediator told him Regents would have criminal charges filed against him if he did not sign the stipulated settlement that night. His own lawyers informed him juries in Orange County "are pro-defense" and he had little chance of success at trial. If he did prevail the award would likely be low. Without commenting on the substance of the alleged duress and coercion, which defendants unequivocally deny, we agree the court correctly determined the evidence plaintiff proffered in support of his claim was protected from disclosure by the mediation privilege. (Evid. Code, § 1119, subd. (a).)

Evidence Code section 1119 provides "[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled . . ." and further "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." (Evid. Code, § 1119, subds. (a), (c).) "To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme, which includes [Evidence Code] sections 703.5, 1119, and 1121, unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 15 [108 Cal.Rptr.2d 642, 25 P.3d 1117], fn. omitted.) "The Legislature decided that the encouragement

of mediation to resolve disputes requires broad protection for the confidentiality of communications exchanged in relation to that process, even where this protection may sometimes result in the unavailability of valuable civil evidence." (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 136 [119 Cal.Rptr.3d 437, 244 P.3d 1080].)

Plaintiff seizes on language in *Foxgate* that allows a party to "report obstructive conduct [in mediation] to the court." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra*, 26 Cal.4th at p. 17.) But what plaintiff attempted to report was not conduct but communications. An example of conduct that was legally disclosed was a party's failure to attend court-ordered mediation. (*Campagnone v. Enjoyable Pools & Spas Service & Repairs, Inc.* (2008) 163 Cal.App.4th 566, 571 [77 Cal.Rptr.3d 551].) But the court strictly limited its ruling, holding that "reporting anything more may violate the confidentiality rules." (*Id.* at p. 572.)

Plaintiff emphasizes that the "conduct" was so egregious the confidentiality requirement could not "shield[]" it. But in banning any court-created exceptions to the statutory confidentiality protections, the Supreme Court emphasized that the Legislature had weighed the possibility of some unfair results against the strong public policy supporting mediation and come down on the side of mediation. (*Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra*, 26 Cal.4th at p. 17.) There is no exception for " 'good cause.' " (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 423 [15 Cal.Rptr.3d 643, 93 P.3d 260].)

After citing two cases in the opening brief where review had been granted (*Cassel v. Superior Court* (Cal.App.) and *Porter v. Wyner* (Cal.App.)), in his reply brief plaintiff relies on *Cassel v. Superior Court, supra*, 51 Cal.4th 113, which he claims holds that alleged criminally prosecutable statements by defendants' counsel and his own lawyers may be disclosed despite the mediation confidentiality protection. He misinterprets or misunderstands the case.

There the court reiterated the primacy of the confidentiality of discussions in mediation, including those between lawyers and their clients, refusing to allow disclosure for use in a legal malpractice action. (*Cassel v. Superior Court, supra*, 51 Cal.4th at p. 123.) In addition to quoting from the concurrence, plaintiff points to language in a footnote that Evidence Code

section 1119, subdivisions (a) and (b), excludes from confidentiality protection statements sought to be used in a criminal prosecution. (*Cassel v. Superior Court, supra*, 51 Cal.4th at p. 135, fn. 11.) But this action in which plaintiff seeks to rely on mediation discussions is not a criminal action and his claim that the statements "constitute" a crime does not exempt him from the statutory mandate of confidentiality.

The only case allowing for a judicially created exception to the mediation confidentiality protection is *Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155, 165 [74 Cal.Rptr.2d 464] [in juvenile action minor's constitutional right to impeach witness takes precedence over mediation confidentiality].) *Foxgate* distinguished *Rinaker* based on the minor's due process rights. (*Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra*, 26 Cal.4th at pp. 15–16.) Plaintiff has no comparable rights here.

Further, *Chan v. Lund* (2010) 188 Cal.App.4th 1159 [116 Cal.Rptr.3d 122] does not assist plaintiff. He claims it stands for the principle that the trial court's refusal to consider evidence of coercion violated his due process. Again he misinterprets a holding. What the *Chan* court, in fact, ruled was that it would not decide the argument that failure of a trial court to reject a hypothetical offer of proof based on the mediation confidentiality rule was a due process violation. (*Id.* at pp. 1180–1181.)

### 6. Fraudulent Concealment of Evidence

Plaintiff also seeks reversal based on the claim defendants withheld evidence in discovery. If he had known of it, it "would have impacted his decision whether to settle at the mediation." The trial court was "not persuaded" Regents "concealed documents" and found plaintiff's claim he "would have 'altered [his] decision making process' " to be "equivocal." Because the court made factual findings we review this using a substantial evidence standard, not de novo. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) And plaintiff did not meet his burden to show there was insufficient evidence to support the court's findings.

To prevail on a substantial evidence claim a party must " 'set forth in [his] brief all the material evidence on the point and not merely [its] own evidence.' " (*Foreman & Clark Corp. v. Fallon, supra*, 3 Cal.3d at p. 881, italics omitted). A party is also required to support evidentiary claims with accurate record references (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416]), which plaintiff failed to do here. In his four and a half pages of argument, the bulk of which was a recitation of or discussion about purported evidence, plaintiff made only one reference to the record and it is

not sufficient to support all the factual claims. We are not required to comb the record to locate evidence substantiating plaintiff's recitation. (*Ibid.*) His failure to comply with these requirements forfeits this claim. (*Foreman & Clark Corp. v. Fallon, supra,* 3 Cal.3d at p. 881.) In the reply brief plaintiff supplies some record references although they are still incomplete, but this is too little, too late because defendants did not have the opportunity to respond.

### 7. Entire Agreement

Plaintiff complains the court erred by enforcing the stipulated settlement "without applying the requirements of the [p]rocessing [l]etter." He relies on language in the first page of the stipulated settlement that provides the "[p]rocessing terms of letter dated 4/29/08 incorporated herewith." The trial court rejected this claim on the ground the processing letter dealt with the subsequently drafted final settlement agreement and Regents was seeking to enforce only the stipulated settlement. The court was correct.

### 8. Admissibility of Stipulated Settlement

Finally, we reject plaintiff's contention the stipulated settlement was not admissible because protected by mediation confidentiality. Evidence Code section 1123 provides that a "written settlement agreement" made during a mediation may be disclosed if it "is signed by the settling parties and *any* of the following conditions are satisfied": the agreement states it may be disclosed or admitted or states it is binding or enforceable. (Evid. Code, § 1123, subds. (a), (b), italics added.) Here, the stipulated settlement states that it "is binding on the parties and is admissible in court pursuant to Evidence Code section 1123 and enforceable by motion of any party hereto . . . ."

In support of his claim plaintiff reiterates his assertions Yee's signature on behalf of Regents was insufficient and the individual defendants had to have signed the stipulated settlement. We have thoroughly discussed and discounted these arguments.

Plaintiff also maintains that Evidence Code section 1122 bars disclosure because there were two other participants at the mediation who did not agree to disclosure. But plaintiff fails to provide a citation to the record supporting this claim. Further, Evidence Code section 1122, subdivision (a)(2) allows for disclosure when the "writing [is] prepared by or on behalf of fewer than all the mediation participants" and those participants agree to disclose. Thus, even if there were other participants, since they were not parties to the stipulated settlement their consent was not required.

## DISPOSITION

The judgment is affirmed. We grant respondents' request for judicial notice and deny appellant's request. Respondents are entitled to costs on appeal.

Moore, J., and Aronson, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 29, 2012, S199609. Liu, J., did not participate therein.