Filed 11/25/15  P. v. Flores CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049760 |
| v. | (Super. Ct. No. 12NF1891) |
| CARMELO SANCHEZ FLORES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance P. Jensen, Judge.  Affirmed.

Salvatore Coco and Sandra J. Applebaum for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Anthony Da Silva and Martin E. Doyle, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Carmelo Sanchez Flores of three counts of lewd acts on children under 14 years of age. (Pen. Code, § 288, subd. (a).)[1] The jury found true the allegations (1) as to count 1, he engaged in substantial sexual conduct with a child under 14 years of age (§ 1203.066, subd. (a)(8)); (2) as to counts 1 and 3, defendant was convicted of the lewd act offense against more than one victim (§ 667.61, subds. (b) & (e)(5)[2]; and (3) as to count 2, the statute of limitations was tolled (§ 803, subd. (f)(l )). The court sentenced defendant to an aggregate prison term of 30 years to life on counts 1 and 3, plus a consecutive determinate six years in prison on count 2.

Defendant contends (1) the court abused its discretion by admitting evidence of uncharged conduct pursuant to Evidence Code section 1108; (2) the court improperly instructed the jury with a modified version of CALCRIM No. 1191 allowing the jury to consider the charged and uncharged conduct as propensity evidence; (3) the statute of limitations on count 2 was not tolled and the jury was improperly instructed on tolling; (4) the prosecutor committed misconduct; and (5) the errors were cumulatively prejudicial. The People contend the abstract of judgment must be corrected. We agree with the People's contention. In all other respects, we affirm the judgment.

## FACTS

In accordance with the usual standard of review, we recite the evidence in the light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We separately recite the evidence in support of each count.

---

[1]     All statutory references are to the Penal Code unless otherwise stated.

[2]     Section 667.61, subdivision (e)(5) has subsequently been renumbered as subdivision (e)(4). (Stats. 2010, ch. 219, § 16.)

*Count 1: K.C.*

At the time of defendant's trial, K.C. was 16 years old. Defendant is K.C.'s father's second cousin. K.C.'s father considered defendant to be like a brother. K.C. saw defendant at family parties. She also saw him when defendant visited her family's house or when they visited his house.

When K.C. was in the second grade, she went into the restroom during a family party and closed the door. She was sitting on the toilet when defendant came in. He said, "Oh, don't worry. Just keep on doing your business." He went into the shower behind the shower curtain.

K.C. got up to wash her hands. Defendant came up behind her, put his arms on the sink, and asked K.C. whether she wanted to show him her underwear. She said, "No." "He kept persisting or asking her to show him." He asked what color "they were." Then he said, "Okay," and opened the door. They walked out. K.C. felt "confused" and "weird," and did not tell her parents what had happened.

About one year later, K.C. and defendant were at a different family party, hosted by an uncle. K.C. used the restroom after locking the restroom door. She finished and got up to wash her hands. Defendant came in. He had her bend over the toilet with her hands on the toilet seat. He was behind her. Her legs were spread apart. Defendant put his fingers in and out of her vagina for less than one minute, while asking her "if it felt good." K.C. said, "No." He stopped, washed his hands, and went out. K.C. "went out and . . . sat on the couch and just sat there." She did not tell her parents because she felt scared, uncomfortable, weird, and confused.

Defendant came over to K.C.'s house one day in October, when K.C.'s little brother was in a Spiderman costume for Halloween, and everyone was looking for his mask. K.C.'s father was not there. Defendant drove the children to a school carnival with K.C. in the front passenger seat and her brother in the back seat. Defendant asked K.C. to keep what had happened "a secret between us."

Later, every time she saw defendant, she would remember what happened. She tried her best to avoid him. Around seventh or eighth grade, she started thinking about it more.

When K.C. was in the eighth grade, she received a journal as a Christmas gift. In the journal — which she kept private — she wrote about boys, her family, what she did with her friends, and anything she wanted to remember. In 2011, K.C. wrote in the journal she was "a statistic of girls who were sexually abused or molested before they turned 10 years old." In another entry, she wrote, "Dear Carmelo." In another section she wrote, "Does that feel good?" "But it didn't feel good." She drew a picture of the first incident, portraying defendant behind her with his arms on the sink. She wrote that her underwear "were pink with white princess crowns on them." She never wore the princess crown underwear again.

In 2012, K.C.'s mother discovered the journal and read the entries about defendant. K.C.'s parents asked her if the entries were true. K.C. "started breaking down." She was crying a lot and was "really overwhelmed." She told her mother what had happened. Previously, K.C. had been afraid to tell her parents because she "knew how close [her] dad was with [defendant], how close [her] family was with him, how much they respected him and [she] didn't want to ruin that between them." K.C.'s parents contacted the police.

*Count 2: M.*

At the time of defendant's trial, M. was 34 years old. When M. was 13 years old, she went to her friend's 14th birthday party at her friend's apartment. M.'s friend is defendant's second cousin. Other cousins were at the birthday party. M.'s friend introduced defendant to M.

In the apartment's carport area, M., defendant, and another female cousin talked. The female cousin departed, leaving defendant and M. alone. Defendant flirted

4

with M. He told her he was 27, twice her age. Defendant began to grope and kiss M. He kissed her breasts through her shirt. He put his fingers in M.'s vagina, forcing the top button of her jeans to come unbuttoned.

M.'s friend saw M. walk from the side of the apartment building with defendant trailing behind her. M. was wiping her mouth, as though there was some "kind of slobber." M. told her friend what had happened.

A year later, M. saw defendant at her friend's birthday party. After the birthday party, M. lost touch with her friend. Over 17 years later, M.'s friend contacted her via Facebook in June 2012 and gave M. instructions to contact a detective due to an incident concerning defendant and the friend's niece.

*Count 3: N.*

At the time of defendant's trial, N. was 16 years old. Defendant is N.'s mother's cousin. When N. was growing up, prior to the charged incident, she would see defendant at parties and get-togethers, and got along well with him.

When N. was 7 or 8 years old, her family lived at her grandparents' house. One day, defendant, his mother, and his brother came over to visit. Defendant, N., and N.'s younger brother went to the downstairs living room to look at the dogs. N.'s brother was sitting on a couch, paying attention to the dogs.

N. and defendant were behind the couch. Defendant was kneeling on one knee and "sat [N.] on his lap." N. was wearing light blue skorts (combination skirt with shorts) adorned with Tinkerbell on the side that went to her mid-thigh.

Defendant rubbed N.'s knee. He started going higher and began rubbing the inside of N.'s leg under her skirt but over her shorts. N. felt uncomfortable, so she "got up like if nothing happened, everything was all right, and just talked to him about the dogs."

That night, defendant went into N.'s bedroom as she was going to sleep. He turned on the light and closed the door. He sat on N.'s bed and they "were just talking." She had changed into black sweats. He put his hand under the blanket and started rubbing her leg over her sweats. She pushed his hand away more than once, but he kept putting his hand back.

N. felt scared, so she said she was going to get a glass of water and got out of the bed. Defendant walked out too. N. went to her mother's room because she was scared. She was crying and told her mother she was scared to sleep by herself. She did not tell her mother about what had happened because she felt her mother "wouldn't think it was important or . . . that [defendant] meant it in the wrong way." N. "felt like it wasn't right," but she "just didn't want to say anything." She told a female cousin about what had happened. The cousin "would stay with [N.] all the time . . . at family parties."

In the summer of 2012, N.'s aunt, R.P., phoned N. and told her that an incident had happened in the family. R.P. is N.'s mother's sister. R.P. asked whether anything had happened between N. and defendant. N. told R.P. that defendant had caressed her leg when she was a little girl and that nothing else had ever happened.

N.'s father took her to the police. N.'s mother, on the other hand, did not support N. talking about what had happened.

*Uncharged Conduct: R.A.*

At the time of defendant's trial, R.A. was 27 years old. R.A.'s high school boyfriend (and, briefly, her husband) was defendant's cousin. R.A. had been emancipated at age 16. R.A. got to know defendant very well.

When R.A. was 17 years old, she was driving and saw defendant driving to her right and telling her to pull over. She pulled into a McDonald's restaurant parking lot. Defendant kissed R.A.'s lips, which was his "thing — he would kiss everyone on the lips." They chatted for a few minutes. Defendant grabbed R.A. by the face, tried to kiss

6

her, and put his arms around her.  He stuck his tongue in her mouth.  R.A. felt very uncomfortable.  R.A. jumped in her car, locked the doors, and drove off as fast as she could.

*Defense Case*

Defendant testified in his own defense and denied all of the events as recounted by the victims of the charged offenses as well as R.A.'s testimony.  He also called witnesses to attest to his good character.  Finally, defendant called a psychologist to testify on his behalf.

DISCUSSION

I. *The Court Properly Admitted Evidence of Defendant's Uncharged Conduct with R.A. and Properly Instructed the Jury on Such Evidence*

Defendant argues the court should have excluded evidence of his encounter with R.A.  He further argues that, even if the evidence was properly admitted, the court erroneously instructed the jury with modified CALCRIM Nos. 1191, 1122, and 370.[3]

A. *Admission of Uncharged Conduct Under Evidence Code Section 1108*

Defendant argues the R.A. incident was dissimilar to his crimes against K.C. and N., because R.A. was unrelated to defendant, she was older than the other

_____

[3] Defendant perfunctorily argues the court erred by failing sua sponte to give a unanimity instruction, since R.A. testified defendant would customarily kiss her and other people on the lips as a form of greeting.  Defendant has waived this contention by failing to include reasoned argument on a court's sua sponte duty to give a unanimity instruction with respect to uncharged conduct.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793; Cal. Rules of Court, rule 8.204(a)(1)(B).)  But without extended analysis, we note that the asserted sua sponte duty to give a unanimity instruction with respect to uncharged conduct was rejected by the California Supreme Court in *People v. Ghant* (1987) 3 Cal.3d 739, 773-774.

7

victims, the age difference between her and defendant was greater, the incident occurred in a public place, and he did not touch R.A.'s vagina or ask to see her underwear. He also claims the evidence was cumulative and remote in time.

At the Evidence Code section 402 hearing, the People requested the admission of evidence of two different incidents concerning R.A. One was the encounter where defendant and R.A. pulled over after seeing each other driving. The second involved multiple incidents at family functions where defendant would greet R.A. with tight hugs that made her uncomfortable, and kissed or touched her near her lips and breasts.

Defense counsel argued the driving incident was too remote and lacked certainty, its probative value was outweighed by the consumption of time, and it was unduly prejudicial. Defense counsel argued the second group of incidents was more prejudicial than probative.

The court found the driving incident was admissible under Evidence Code section 1108 and was relevant and probative as to intent. Under Evidence Code section 352, the court found the driving incident was more probative than prejudicial and would not unduly consume time or mislead the jury. The court stated it had considered the factors and analysis under *People v. Falsetta* (1999) 21 Cal.4th 903, 907 (*Falsetta*).

The court found the second group of incidents to be vague and not necessarily relevant or similar to the charged conduct, as they appeared to be "overly affectionate, uncomfortable situations born of family functions." The court therefore excluded evidence of the second group of incidents.

Evidence Code section "1108 is an exception to the general prohibition against admitting character evidence to prove criminal disposition or propensity." (*People v. Jandres* (2014) 226 Cal.App.4th 340, 352 (*Jandres*)). Evidence of the defendant's commission of an uncharged "sexual offense" is admissible under Evidence Code section 1108 *if* the evidence is admissible under Evidence Code section 352. (Evid.

8

Code, § 1108, subd. (a).)  Thus, the trial court's inquiry under Evidence Code section 1108 is two-fold:  First, does the uncharged conduct come within Evidence Code section 1108's definition of "'sexual offense'"?  (*Jandres*, at p. 353.)  Second, should the evidence be excluded under Evidence Code section 352?  (*Jandres*, at p. 353.)

As to the first inquiry, the statute defines "'[s]exual offense'" to include annoying or molesting a child under 18 years of age in violation of section 647.6.  (Evid. Code, § 1108, subd. (d)(1)(A).)  A trial court has discretion to exclude evidence that the defendant committed a statutorily-enumerated sex offense "'only if the "showing of preliminary facts is too weak to support a favorable determination by the jury."'''" (*Jandres*, *supra*, 226 Cal.App.4th at p. 353.)

Defendant argues no credible evidence showed R.A. was younger than 18 years of age at the time of the driving incident.  To the extent defendant challenges the court's conclusion at the Evidence Code section 402 hearing that the People's proffered evidence could support a jury finding he violated section 647.6, his challenge lacks merit.  At the hearing, the prosecutor argued R.A. was 17 years old when the incident occurred; defense counsel stated R.A. was at least 17 years of age at that time.  To the extent defendant challenges the sufficiency of the evidence to support the jury's finding that R.A. was under 18 years of age, his argument attempts to reweigh the evidence and invade the province of the fact finder.  The jury was entitled to credit R.A.'s testimony that she was 17 years of age at the time of the incident.

As to the second inquiry, Evidence Code section 352 affords a court the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Ibid.*)  In this context, "prejudice" means evidence which tends to evoke an emotional bias against the defendant and which has little effect on the issues; "''"prejudicial" is not synonymous with "damaging."''" (*People v. Bolin* (1998) 18 Cal.4th 297, 320.)  "[T]he

9

trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124). We will disturb that ruling only if "'the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Ibid.*)

Here, the court did not abuse its discretion under Evidence Code section 352. It considered the *Falsetta* factors for determining undue prejudice, i.e., the uncharged offense's "nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.) The court found the evidence of R.A.'s encounter with defendant in the parking lot was more probative than prejudicial because it showed defendant's intent was sexual and because R.A.'s testimony would not unduly consume time or mislead the jury. In contrast, the court found defendant's other conduct with R.A. was vague and dissimilar to the charged offenses, and excluded the evidence. The court's admission of the challenged evidence was neither arbitrary, capricious, nor absurd.

Defendant's argument the R.A. incident was dissimilar to the charged offenses is unpersuasive. Both R.A. and M. had no family relationship to defendant. Defendant was about 17 years older than R.A., and about 11 years older than M.[4] The R.A. incident happened in a parking lot, the M. incident in a carport area. The R.A. incident occurred around 2003 or early 2004, about the same time as the K.C. and N.

---

[4] Although M. testified defendant said he was 27 years old when she was 13 years of age, he is actually about 10 and a half years older than M.

10

incidents.  Given these similarities, defendant's reliance on *Jandres*, *supra*, 226 Cal.App.4th 340 is unavailing.  In *Jandres*, "the many differences between the two offenses [included] the circumstances (daytime attempted burglary in one case, possible stalking and attack at night in the other); the ages of the victims (11 and 18); and the nature of the conduct (inappropriate touching of the mouth in one case, rape in the other) . . . ."  (*Id.* at p. 356.)

### B. *Jury Instructions on Use of Other Crimes as Propensity Evidence, Child Annoyance, and Motive*

Defendant contends that even if the court properly admitted evidence of the R.A. incident under Evidence Code section 1108, the court erred by failing to instruct the jury the People bore the burden of proving (1) he committed child annoyance against R.A., and (2) he did not actually and reasonably believe she was at least 18 years of age.[5]

The court instructed the jury with the following modified version of CALCRIM No. 1191 on the use of other crimes as propensity evidence:  "The People presented evidence that the defendant allegedly committed the crimes of lewd act upon a child under 14 years of age, and child annoyance.  Those crimes are defined for you in these instructions.  [¶]  If you decide that the defendant committed one or more of these offenses beyond a reasonable doubt, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit any of the other charged offenses.  [¶]  If you conclude that the defendant committed one or more of these offenses, that conclusion is only one factor to consider

---

[5]  In his reply brief, defendant argues for the first time his trial counsel rendered ineffective assistance of counsel by failing to request that CALCRIM No. 1122 be given in its entirety.  We do not address issues first raised in the reply brief.  (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295.)

11

along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of any of the other charged offenses.  The People must still prove each element of every charge and allegation beyond a reasonable doubt."

Over defense counsel's initial objection, this modified version of CALCRIM No. 1191 given by the court omitted the second and third paragraphs of the pattern instruction.  Those omitted paragraphs would have provided:  "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offenses.  Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  [¶]  If the People have not met this burden of proof, you must disregard this evidence entirely."  (CALCRIM No. 1191.)

The court instructed the jury with the following modified version of CALCRIM No. 1122 on the elements of child annoyance:  "You have heard testimony from witness [R.A.] regarding an uncharged offense of annoying a child, in violation of Penal Code section 647.6.  [¶]  To prove the defendant guilty of this crime, the People must prove that:  [¶]  One, the defendant engaged in conduct directed at a child;  [¶] Two, a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct;  [¶]  Three, the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child;  [¶] and four, the child was under the age of 18 years at the time of the conduct.  [¶]  It is not necessary that the child actually be irritated or disturbed.  It is also not necessary that the child actually be touched.  It is not a defense that the child may have consented to the act."

This modified version of CALCRIM No. 1122 given by the court omitted the following optional paragraphs of the pattern instruction:  "[Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun.]  [¶] *<Defense: Good Faith Belief Over 18>* [¶]  [The defendant is not guilty of this crime if

12

(he/she) actually and reasonably believed that the child was at least 18 years of age. The People have the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe the child was at least 18 years of age. If the People have not met this burden, you must find the defendant not guilty of this crime.]"

A court bears a sua sponte duty to instruct the jury on the essential elements of an offense (*People v. Flood* (1998) 18 Cal.4th 470, 480-481), and "'on the general principles of law governing the case'" (*People v. Michaels* (2002) 28 Cal.4th 486, 529), i.e., "'"those principles of law *commonly* or closely and openly connected with the facts of the case before the court"'" (*id.* at p. 530). A court also has a sua sponte duty to instruct on a defense if the defendant appears to rely on the defense, or if substantial evidence supports the defense and it is not inconsistent with the defendant's theory of the case. (*People v. Barton* (1995) 12 Cal.4th 186, 195.) "'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.'" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.) "We review defendant's claims of instructional error de novo." (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.)

The court did not err by giving CALCRIM Nos. 1191 and 1122 with the omissions of which defendant complains. As modified and given here, CALCRIM No. 1191 instructed the jury that if it decided defendant "committed one or more of these offenses beyond a reasonable doubt," it could consider such offense(s) as propensity evidence. Thus, the modified version actually raised the standard of proof as to defendant's uncharged offense concerning R.A., from preponderance of the evidence to beyond a reasonable doubt. "[T]here was no risk the jury would apply an impermissibly low standard of proof." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1168 (*Villatoro*).)

As to CALCRIM No. 1122, defense counsel did not request inclusion of the omitted paragraphs. Nor did the court err by not including them sua sponte. As the court

13

stated, "We don't have anything about a good faith belief." The defense theory of the case was that defendant did not kiss R.A. as she described. This theory was inconsistent with an alternative defense theory that, even if he did commit the act, he believed she was 18 years old.[6]

Finally, defendant contends the court erred by instructing the jury the People were not required to prove he had a motive to commit any of the charged crimes. (CALCRIM No. 370.) He argues the instruction conflicted with CALCRIM No. 1122's requirement that a defendant's conduct be motivated by an unnatural or abnormal sexual interest in the child in order to constitute child annoyance. Defendant cannot challenge the giving of the motive instruction, however, since he requested it below. (*People v. Lucero* (2000) 23 Cal.4th 692, 723.) Furthermore, the motive instruction expressly refers to "charged" crimes. The jury was instructed to pay careful attention to all the instructions and consider them together. Jurors are presumed to understand, correlate, and follow the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

II. *The Court Properly Instructed the Jury With CALCRIM No. 1191 as to the Three Charged Crimes and Gave the Appropriate Unanimity Instruction*

Defendant argues evidence of the charged crimes for use as propensity evidence under Evidence Code section 1108 should not have been permitted. Defendant further argues, even if the evidence was properly permitted to be used as propensity evidence, the court failed to conduct an Evidence Code section 352 analysis before instructing the jury with the modified version of CALCRIM No. 1191 quoted above.

---

[6] In his reply brief, defendant asserts his counsel argued R.A. was actually 18 years old. His cited reporter's transcript pages, however, reveal only that defense counsel argued R.A. could have been 17, 18, or even 19 years old.

14

With respect to K.C. and M., defendant claims the court gave an incomplete unanimity instruction.[7]

In *Villatoro*, *supra*, 54 Cal.4th at pages 1164-1165, our Supreme Court held Evidence Code section 1108 permits the use of charged and uncharged sex offenses as propensity evidence in sex offense cases.

Although the judge must consider Evidence Code section 352 (*Villatoro*, *supra*, 54 Cal.4th at p. 1163), he need not "'expressly weigh prejudice against probative value — or even expressly state that he has done so [citation].'" (*People v. Padilla* (1995) 11 Cal.4th 891, 924, disapproved on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) Rather, a reviewing court can "infer an implicit weighing by the trial court on the basis of record indications well short of an express statement." (*Padilla*, at p. 924.) For example, based on "argument of counsel or comments by the trial court, or both, touching on the issues of prejudice and probative value . . . , we might infer that the court was aware of the Evidence Code section 352 issue and thus of its duty to weigh probative value against prejudice." (*Ibid.*) In *Villatoro*, the trial court stated to the parties, "'[CALCRIM No.] 1191, for the record, I've given you both a copy based on the instruction given in [*People v. Wilson* (2008) 166 Cal.App.4th 1034]." (*Villatoro*, at p. 1168.) Based on the "'trial court's express reliance on a key case in this area, considered in light of the entire record,'" our Supreme Court inferred that "the trial court implicitly conducted [an Evidence Code] section 352 analysis." (*Ibid.*)

Here, based on the court's express Evidence Code section 352 weighing of probative value versus prejudice with respect to the R.A. uncharged conduct, the court's

---

[7] In his reply brief, defendant argues for the first time his trial counsel rendered ineffective assistance of counsel by failing to ask the court to conduct an Evidence Code section 352 balancing prior to allowing each charged act to be used as propensity evidence for the other charged conduct. We do not address issues first raised in the reply brief. (*Provost v. Regents of University of California*, *supra*, 201 Cal.App.4th at p. 1295.)

reference to the *Falsetta* factors, and the court's lengthy discussion of CALCRIM No. 1191 (which demonstrated the court's familiarity with the instruction), we infer the "court had in mind the appropriate analytic framework for passing on the admissibility of the evidence, that the court was therefore aware of the need to weigh the evidence under section 352, and thus that it must have done so" with respect to the charged conduct. (*Villatoro*, *supra*, 54 Cal.4th at p. 1183.)

Finally, defendant notes there was evidence defendant touched K.C. on two separate dates and touched M. on the same date in more than one way. Defendant contends the court erred by omitting the following optional last paragraph of CALCRIM No. 3502, a unanimity instruction: "[Evidence that the defendant may have committed the alleged offense (on another day/ [or] in another manner) is not sufficient for you to find (him/her) guilty of the offense charged.]" This optional paragraph was unnecessary, however, given the court's clear unanimity instructions to the jury. The court instructed the jury with CALCRIM Nos. 3502 and 3500 as follows: "The defendant is charged with lewd act upon a child under 14 in counts 1 and 2. [¶] The People have presented evidence of more than one such act. To prove the defendant committed these offenses, you must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one act of touching [K.C.'s] vaginal area for count 1 and [M.'s] vaginal area for count 2 and you all agree on which act he committed for each count." (CALCRIM No. 3502.) "The defendant is charged . . . with lewd act upon a child under 14 in count 3 on or about and between January 13, 2004, and January 12th, 2006. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one [of] these acts and you all agree on which act he committed." (CALCRIM No. 3500.)

16

III. *There was No Error as to Count 2 Concerning M.*

Defendant contends count 2 was barred by the statute of limitations and must therefore be dismissed. He further argues, even if the charge was not time barred, the conviction must be reversed because (1) the verdict form did not ask the jury to make a finding of substantial sexual conduct, (2) the jury was given no guidance and made no finding on independent corroborating evidence, (3) the unanimity instruction referred to defendant's mere touching of M.'s vagina, and (4) the single witness testimony instructions conflicted with the requirement that M.'s testimony be corroborated.

A. *The Statute of Limitations was Tolled Under Section 803, Subdivision (f)(1)*

The statute of limitations for a violation of section 288, subdivision (a), is six years. (§§ 288, subd. (a), 800; *People v. Smith* (2011) 198 Cal.App.4th 415, 424.) In an amended complaint filed on July 16, 2012, the People alleged defendant committed section 288, subdivision (a) offenses upon M. between September 9, 1992 and September 8, 1993. Thus, the prosecution of count 2 began more than six years after the alleged offense.

In an amended information filed on November 12, 2013, the People first alleged that the statute of limitations was tolled pursuant to section 803, subdivision (f)(1) (the tolling allegation). The tolling allegation alleged the victim reported the offense to a law enforcement agency on June 18, 2012, the offense involved substantial sexual conduct as described in section 1203.066, subdivision (b), and that the People relied on the "additional victims" for independent admissible evidence.

Section 803, subdivision (f)(1) extends the statute of limitations (under certain circumstances) when a victim reports to California law enforcement that, while the victim was under the age of 18 years, a section 288 crime was committed against him or her. The statute allows the People to file a complaint within one year of the victim's

17

report if (1) the crime involved *substantial sexual conduct* under section 1203.066, subdivision (b) (defined to include penetration of the victim's vagina by a foreign object), and (2) independent admissible evidence (not including opinions of mental health professionals) *corroborates* the allegation and, if the victim was at least 21 years old when reporting the crime, the independent evidence must be *clear and convincing*. (§ 803, subd. (f)(2)(B), (C) & (3).)[8]

Here, within one month after M. first reported the crime to Anaheim law enforcement in June 2012, the People charged defendant with the offense in an amended complaint. But the People filed the amended information containing the tolling allegation almost 17 months after M. lodged her report.

Section 1009 authorizes a court to permit a complaint or information to be amended "for any defect or insufficiency, at any stage of the proceedings." The statute further provides: "The defendant shall be required to plead to such amendment or amended pleading forthwith . . . and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, *unless the substantial rights of the defendant would be prejudiced thereby*, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An . . . information [cannot be amended] so as to charge an offense not shown by the evidence taken at the preliminary examination. . . ." (Italics added.)

Similarly, under section 960, "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form *which does not prejudice a substantial right of the defendant upon the merits*." (Italics added.)

---

[8] A third statutory requirement — i.e., that the "limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired" (§ 803, subd. (f)(2)(A)) — was met in this case.

Here, defendant's substantial rights were not prejudiced by the late addition of the tolling allegation because defendant was given notice of the pertinent facts at his January 10, 2013 preliminary hearing at which he and his counsel were present. There, an officer testified, as to M., that he interviewed her on June 18, 2012, and she told the detective that defendant "stuck a finger inside of her vagina" at a friend's birthday party in 1993.[9]

Accordingly, count 2 was not time-barred due to the timing of the amendment of the information which added the tolling allegation.


B. *Jury Instructions and Verdict Form*

Defendant complains that the court instructed the jury with CALCRIM No. 1110 on lewd acts on a child under the age of 14 years with respect to counts 1, 2, and 3, which describes the conduct element as follows: "The defendant willfully touched any part of a child's body either on the bare skin or through the clothing." He further complains that the court instructed the jurors they had to unanimously agree that the

---

[9] Defendant contends the tolling allegation "changed" the charged offense because section 803, subdivision (f)(1) "added the requirement [of] substantial sexual conduct that had to be proved by independent corroborating evidence" by clear and convincing proof. Although defendant "has found no specific case" supporting his contention the tolling allegation "changed" the charged crime, he urges us to adopt his position pursuant to *People v. Morgan* (1977) 75 Cal.App.3d 32. *Morgan* states the statute of limitations in criminal matters is jurisdictional and that a charging document which shows on its face the prosecution is time-barred fails to state a public offense. (*Id.* at p. 36.) But *Morgan* also states: "An amendment to toll the statute of limitations does not change the offense charged and thus is permissible." (*Id.* at p. 38; see also *People v. Chadd* (1981) 28 Cal.3d 739, 758.) Furthermore, "there is neither claim nor showing that such an amendment would prejudice the substantial rights of this defendant . . . ." (*Chadd*, at p. 758.) As to jurisdiction, the "tolling of the statute of limitations is an essential element in the final power to pronounce judgment, but is not part of the crime itself." (*Morgan*, at p. 40.)

In any case, defendant's focus on "changing" the charge is contrary to section 1009's express standard, which prohibits an amendment which charges "an offense not shown by the evidence taken at the preliminary examination." (*Ibid.*)

19

People had proved he committed at least one act of "touching" M.'s vaginal area for count 2. He argues touching a victim's vaginal area or body part does not constitute substantial sexual conduct. He asserts the verdict form for count 2 did not expressly require the jury to make a finding of substantial sexual conduct. He also asserts the jury made no finding that independent evidence corroborated M.'s allegation.

Defendant's complaints are meritless. On the verdict form for count 2, the jury found true "that the prosecution of this count began within the required time period, pursuant to Penal Code section 803(f)(1)." The court instructed the jurors that in order to find the tolling allegation to be true, they had to find (1) substantial sexual conduct, and (2) independent corroborating evidence by a clear and convincing standard of proof, as follows: "If the People have met their burden of proving beyond a reasonable doubt the crime charged in count 2, then you must decide whether the prosecution for that count began within the required time period, pursuant to Penal Code section 803(f)(1). [¶] The People must prove the following factual allegations by a preponderance of the evidence. . . . [¶] . . . [¶] . . . [T]wo, the crime involved substantial sexual conduct. [¶] Substantial sexual conduct includes penetration of the vagina . . . of . . . the victim . . . by any foreign object. [¶] . . . [¶] The People must also prove the following allegation by clear and convincing evidence. . . . This means, the People must persuade you that it is highly probable that the fact is true. [¶] Three, there is independent evidence, not including the opinion of a medical health professional, that corroborates [M.'s] allegation. [¶] . . . [¶] You will receive a separate finding form on count 2, and you must decide whether the People began the prosecution of count 2 within the required time period."[10]

---

[10] Because there is no pattern instruction for section 803, subdivision (f)(1), the parties agreed to the text of the instruction given.

20

The foregoing instruction was clear and complete. It told the jurors they were to make a finding on the tolling allegation *only if* they had already found defendant guilty beyond a reasonable doubt on count 2. It told the jurors the precise requirements of section 803, subdivision (f)(1) for determining whether the People had begun prosecuting count 2 within the required time period.

"Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) We presume the jury followed CALCRIM No. 1110 in finding defendant guilty of count 2, and followed the specific instruction on the tolling allegation in finding the People had timely prosecuted the charge. The verdict form plainly required the jurors to make separate findings on count 2 and the tolling allegation.

Defendant next contends the court erred with respect to the tolling allegation by instructing the jury that the "testimony of only one witness can prove any fact" (CALCRIM No. 301) and that conviction of a sexual assault crime may be based solely on the complaining witness's testimony (CALCRIM No. 1190). He argues the court erred by failing to include the optional introductory phrase of the pattern CALCRIM No. 301 instruction, which states, "Except for the testimony of <insert witness's name>, which requires supporting evidence . . . ." We agree the better practice would have been for the court to include this phrase with respect to the tolling allegation. Nonetheless, "we must look to the entire charge, rather than merely one part, to determine whether error occurred. [Citation.] Looking to the instructions as a whole, we find no error." (*People v. Chavez* (1985) 39 Cal.3d 823, 830–831.) The jury was instructed that the People were required to prove, clearly and convincingly (i.e., persuading the jury there was a high probability the fact was true), that independent evidence (not including the opinion of a medical health professional) corroborated M.'s allegation. We presume the jury correctly correlated and followed the court's instructions. (*People v. Sanchez*, *supra*, 26 Cal.4th at p. 852.)

21

Finally, defendant asserts the jury was provided no guidance on what constituted the independent corroborating evidence on which the prosecution relied. As stated above, the jury was instructed on all of the statutory requirements for independent corroborating evidence set forth in section 803, subdivision (f)(1). Defendant cites no legal authority as to the need for any further "guidance" to the jury.

IV. *Defendant Has Waived His Prosecutorial Misconduct and Other Contentions Inadequately Briefed in Section IV of His Opening Brief*

Section IV of defendant's opening brief complains about the prosecutor's elicitation of alleged "bad character evidence" during his cross-examination of defendant's expert psychologist and closing argument regarding defendant, as well as about defense counsel's purported ineffective assistance. But section IV does not address or even acknowledge that Evidence Code section 1101, subdivision (a)'s "ban against admitting character evidence to prove conduct . . . [citation] . . . does not affect the admissibility of evidence regarding the credibility of a witness [citation]." (*Villatoro*, *supra*, 54 Cal.4th at p. 1159; § 1101, subd. (c).) The opening brief does not mention Evidence Code sections 785 (witness's credibility may be attacked by any party), 721, subdivision (a)(3) (expert witness may be fully cross-examined on the basis and reasons for opinion), or 1202 (impeachment of hearsay declarant's credibility).

The Attorney General contends section IV of defendant's opening "brief alleging, in 'kitchen sink' fashion, prosecutorial misconduct, ineffective assistance of defense counsel, the failure to give character evidence instructions, introduction of irrelevant evidence and the violation of [his] due process rights fails to comport with the rules of court and should be stricken."

The Attorney General is correct that defendant has waived the purported errors alleged in section IV of his opening brief. A court may treat an inadequately argued contention "as waived, and pass it without consideration." (*People v. Stanley*, *supra*, 10 Cal.4th at p. 793; Cal. Rules of Court, rule 8.204(a)(1)(B).)

## V. *There is No Cumulative Error*

Defendant asserts that, due to cumulative error, he was prejudiced and the judgment must be reversed. As discussed above, his allegations of error are without merit; therefore, there is no cumulative effect to consider.

## VI. *The Abstract of Judgment Must Be Corrected*

Finally, the Attorney General correctly points out the abstract of judgment fails to indicate that the court sentenced defendant to *consecutive* terms of 15 years to life on counts 1 and 3. When there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Walz* (2008) 160 Cal.App.4th 1364, 1367, fn. 3.) Accordingly, the abstract of judgment must be amended.

DISPOSITION

The trial court is directed to prepare an amended abstract of judgment reflecting that the court sentenced defendant to *consecutive* terms of 15 years to life on counts 1 and 3, and a consecutive six-year term on count 2, and is directed to forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.