Filed 11/23/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KAIL DE LEON, | B315394 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV03552) |
| v. | |
| JUANITA'S FOODS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mel Red Recana, Judge. Affirmed.

Jackson Lewis, James P. Carter and Jessica M. Ewert for Defendant and Appellant.

Guerra & Casillas, Ruben Guerra and Tizoc Perez-Casillas, for Plaintiff and Respondent.

————————————

Code of Civil Procedure sections 1281.97 and 1281.98 provide that if a company or business that drafts an arbitration agreement does not pay its share of required arbitration fees or costs within 30 days after they are due, the company or business is in "material breach" of the arbitration agreement. (Code Civ. Proc., §§ 1281.97, subd. (a)(1); 1281.98, subd. (a)(1).[1]) In the case of such a material breach, an employee or consumer can, among other things, withdraw his or her claim from arbitration and proceed in court. (§§ 1281.97, subd. (b)(1); 1281.98, subd. (b)(1).)

Following commencement of arbitration proceedings between appellant Juanita's Foods and respondent Kail De Leon, Juanita's Foods failed to pay its share of arbitration fees within 30 days after such fees were due. Based on that late payment, the trial court concluded that Juanita's Foods was in material breach of the parties' arbitration agreement and allowed De Leon to proceed with his claims against Juanita's Foods in court.

Juanita's Foods argues that the trial court should have considered factors in addition to its late payment—for example, whether the late payment delayed arbitration proceedings or prejudiced De Leon—to determine the existence of a material breach of the arbitration agreement.

We conclude that the trial court correctly declined to consider these additional factors, and we affirm.

---

[1] All subsequent undesignated statutory references are to the Code of Civil Procedure.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. The arbitration agreement

The material facts underlying this appeal are not in dispute. De Leon filed a civil complaint against Aerotek, Inc. and Juanita's Foods on January 28, 2020, alleging 20 causes of action relating to his former employment.[2] Aerotek thereafter filed a motion to compel arbitration and Juanita's Foods filed a joinder in that motion.

Aerotek's motion was based on its arbitration agreement with De Leon. The arbitration agreement states that De Leon entered into the agreement "[a]s consideration for [his] application for and/or [his] employment with Aerotek, Inc. . . . ." In their arbitration agreement, Aerotek and De Leon agreed that De Leon would arbitrate "all disputes, claims, complaints, or controversies" he had against Aerotek "and/or any of its clients or customers," and that the parties would "use Judicial Arbitration and Mediation Services ('JAMS') subject to its then-current employment arbitration rules and procedures . . . ." Aerotek and De Leon further agreed that the arbitration agreement was "governed by the [Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA)] and, to the extent not inconsistent with or preempted by the FAA, by the laws of the state of California . . . ."

---

[2] It appears that Aerotek is a staffing agency that referred De Leon to work at Juanita's Foods. De Leon's complaint alleged that Aerotek and Juanita's Foods were each his employer.

3

It is undisputed that the arbitration agreement between Aerotek and De Leon applies to De Leon's claims against Juanita's Foods.[3]

## II.    Juanita's Foods's failure to timely pay arbitration fees

The trial court granted the motion to compel arbitration on October 16, 2020.  On October 22, 2020, De Leon submitted a demand for arbitration to JAMS, identifying both Aerotek and Juanita's Foods as respondents.

JAMS then sent separate invoices dated November 2, 2020, to Aerotek and Juanita's Foods.  The invoices billed $1,300 to each Aerotek and Juanita's Foods, and identified the invoiced amounts as "Filing Fee[s]."  The invoices stated, "For Arbitration Cases, please contact your case manager for due date, otherwise, payment is due upon receipt."  Aerotek paid the filing fee on November 10, 2020, and Juanita's Foods paid the filing fee on November 25, 2020.

On December 3, 2020, JAMS sent a letter to the parties confirming commencement of the arbitration proceedings. Among other things, the letter notified the parties that the "only fee a consumer employee may be required to pay is $400 of the Filing Fee," and that "[a]ll other costs, including the remainder of

---

[3]    Although not addressed directly by the parties, we presume this is because Juanita's Foods is one of Aerotek's "clients or customers" within the meaning of the arbitration agreement.

the Filing Fee, must be borne by the company."[4]  The parties thereafter selected an arbitrator from a list provided by JAMS.

Then, on December 17, 2020, JAMS issued separate invoices for $5,000 to each Juanita's Foods and Aerotek.  The invoices stated in part that the fees were a "[d]eposit for services: To be applied to professional time (session time, pre and post session reading, research, preparation, conference calls, travel, etc.), expenses and case management fees."  Juanita's Foods does not dispute that JAMS appropriately allocated these fees between Juanita's Foods and Aerotek.[5]

The next day, JAMS sent a letter to the parties confirming appointment of the arbitrator and attaching the arbitrator's fee schedule.  In its letter, JAMS again notified the parties that other than "$400 of the Filing Fee," "[a]ll other costs, including the remainder of the Filing Fee, must be borne by the company."  The

---

[4]    JAMS's correspondence is consistent with the arbitration agreement between Aerotek and De Leon.  The arbitration agreement provided that De Leon would pay any "JAMS filing or administrative fee up to the amount of the initial filing fee to commence an action in a Court that otherwise would have jurisdiction ('filing fee')," and that Aerotek would "pay any amount in excess of the filing fee" and "any other JAMS administrative fees, the Arbitrator's fees, and any additional fees unique to arbitration."

[5]    In an email dated February 5, 2021, counsel for Juanita's Foods informed the parties and JAMS that there "was some required discussion between Respondents Juanita's [Foods] and Aerotek about responsibility for the entire payment, which was resolved yesterday," and that Juanita's Foods "informed JAMS yesterday of its commitment to pay the other half of the arbitration fee in the immediate future."

5

letter further advised the parties that the "paying party has been billed a preliminary deposit to cover the expense of all pre-hearing work" and that "[p]ayment is due no later" than January 4, 2021.[6] According to the fee schedule attached to the letter, "[a]ll fees are due and payable in advance of services rendered and by any applicable due date as stated in a hearing confirmation letter."

On January 4, 2021, the due date for the JAMS invoices, JAMS emailed the parties reminding them that the "initial retainer payment is due today" and provided them with payment instructions. JAMS sent a follow-up email to the parties on January 27, 2021, advising them that JAMS still had not received the "initial retainer deposit request."

JAMS sent another email to the parties on February 4, 2021, advising them that although Aerotek had paid the outstanding fees, JAMS had not received the "outstanding balance of $5,000 for the initial retainer in this matter" from Juanita's Foods. Counsel for Juanita's Foods responded the same day, notifying JAMS that it had advised Juanita's Foods "to pay the invoice [as soon as possible]."

On February 5, 2021, counsel for De Leon advised JAMS and the parties that De Leon would file a motion to terminate arbitration proceedings because of Juanita's Foods's failure to pay the outstanding balance within 30 days after its due date. Later that same day, counsel for Juanita's Foods advised JAMS and the parties that Juanita's Foods intended to pay the

---

[6] The letter mistakenly states that "[p]ayment is due no later than January 4, 2020." All parties agree the fees were actually due January 4, 2021.

6

outstanding fee "in the immediate future" and asked JAMS to proceed with the arbitration.

At first, JAMS responded that it would proceed with scheduling an arbitration management conference because Juanita's Foods had "advised that payment . . . is forthcoming." Minutes later, De Leon advised JAMS and the parties that he had filed a motion to vacate the order compelling arbitration. JAMS then promptly changed course, notifying the parties it would not proceed with arbitration proceedings until De Leon's motion was resolved.

Juanita's Foods paid JAMS the outstanding fees on February 8, 2021. The parties agree that Juanita's Foods did not pay the outstanding fees of $5,000 within 30 days after the due date set by JAMS.

## III. Motion to vacate order compelling arbitration

De Leon's motion to vacate the order compelling arbitration sought termination of the arbitration proceedings with both Juanita's Foods and Aerotek, relying on Juanita's Foods's failure to pay the outstanding fees to JAMS within 30 days after the due date. The trial court concluded that arbitration could continue between De Leon and Aerotek because Aerotek had timely paid its portion of arbitration fees. That aspect of the trial court's ruling is not before us.

Relevant here, the trial court also concluded that Juanita's Foods's failure to pay the required arbitration fees within 30 days after the due date constituted a material breach of the arbitration

7

agreement pursuant to section 1281.98.[7]  Relying on the "plain language" of section 1281.98, the court concluded that "a defendant is automatically in material breach of the arbitration agreement once the defendant fails to pay the arbitration fees or costs within 30 days of the due date."  The court thus declined Juanita's Foods's request that the court consider additional factors beyond the late payment—such as whether the late payment created delay in the arbitration proceedings or otherwise prejudiced De Leon—to determine whether Juanita's Foods materially breached the arbitration agreement.

Last, although it found that section 1281.98 was "unambiguous and clear," the court also considered the statute's legislative history.  The court found that the legislative history

---

[7]  In an order dated July 12, 2021, the trial court noted that De Leon's initial motion to vacate the order compelling arbitration relied on section 1281.97, not section 1281.98, and that Juanita's Foods and Aerotek opposed the motion because, among other things, the fees at issue were not to "initiate an arbitration proceeding."  (See § 1281.97, subd. (a)(1).)  The court's July 12 order concluded that it was "not entirely clear whether the initial retainer fee at issue here is a fee 'to initiate an arbitration proceeding,' " but that regardless of such uncertainty "it appears the section immediately following CCP § 1281.97, section 1281.98, would apply to this matter if [De Leon's] request does not fall within section 1281.97."  Despite acknowledging the two statutes were "substantially the same," the court granted a continuance to allow the parties to submit further briefing to address the applicability of section 1281.98.  De Leon's amended motion cited both sections 1281.97 and 1281.98.  Because the trial court's subsequent order vacating its order compelling arbitration and Juanita's Foods's appeal focus on section 1281.98, we do too.

8

failed to support Juanita's Foods's contention that "the legislature only wanted the statute to apply when there has been some kind of delay in the arbitration proceeding."

The court stayed the lawsuit against Juanita's Foods pending the outcome of the arbitration proceeding against Aerotek to "address any issues regarding conflicting rulings on common issues of law or fact."

Juanita's Foods timely appealed.

## DISCUSSION

Juanita's Foods contends the trial court erred by failing to consider additional factors aside from its late payment in determining the existence of a "material breach" pursuant to section 1281.98. We disagree. Like the trial court, we conclude that late payment as provided in section 1281.98 constitutes a "material breach" without regard to any additional considerations. We reach that conclusion based on the statute's plain language. However, like the trial court, we also find that the statute's legislative history supports our interpretation.

## I. Standard of review and statutory construction principles

Ordinarily, a trial court's determination that a party waived the right to arbitrate is subject to substantial evidence review. (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 946.) Here, however, the parties do not dispute the factual support for the trial court's ruling. Rather, they dispute the proper interpretation of section 1281.98. In this circumstance, our review is de novo. (*Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 503 ["We review a trial court's interpretation and application of statutes de novo."]; cf. *Ramos v.*

9

*Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686 [denial of motion to compel resting on a decision of law subject to de novo review].)

We apply well-established rules of statutory interpretation in construing section 1281.98.  "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)  "[W]e must first look to the words of the statute because they are the most reliable indicator of legislative intent.  [Citation.]  If the statutory language is clear and unambiguous, the plain meaning of the statute governs.  [Citation.]" (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056.)

"If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved' " and the statute's legislative history. (*People v. Sinohui* (2002) 28 Cal.4th 205, 211.)

## II.    Section 1281.98

Perceiving that a "company's failure to pay the fees of an arbitration provider" as required by an arbitration agreement or applicable law "hinders the efficient resolution of disputes and contravenes public policy," in 2019 the California Legislature passed Senate Bill No. 707 and added sections 1281.97 and

1281.98 to the California Arbitration Act (CAA) (§ 1280 et seq.).[8] (Stats. 2019, ch. 870, § 1(c); see also *id*, §§ 4 [adding section 1281.97], 5 [adding section 1281.98].)  Sections 1281.97 and 1281.98 "largely parallel" each other.  (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 633, fn. 4 (*Gallo*).)  Whereas section 1281.97 concerns a failure to timely pay "the fees or costs to *initiate*" an arbitration proceeding (§ 1281.97, subd. (a)(1), italics added), section 1281.98 concerns a failure to timely pay "the fees or costs required to *continue*" an arbitration proceeding (§ 1281.98, subd. (a)(1), italics added).

Subdivision (a)(1) of section 1281.98 provides:  "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to

---

[8]     Senate Bill No. 707 also added section 1281.99, which establishes various sanctions in the event of a material breach pursuant to sections 1281.97 and 1281.98.  (Stats. 2019, ch. 870, § 6.)  In 2021, the California Legislature amended sections 1281.97 and 1281.98 to obligate an arbitration provider to supply the parties with invoices setting forth the "full amount owed and the date that payment is due," and to set a statutory default due date of "due upon receipt" unless the parties agree otherwise. (§§ 1281.97, subd. (a)(2); 1281.98, subd. (a)(2); see Stats. 2021, ch. 222, §§ 2, 3.)

compel the employee or consumer to proceed with that arbitration as a result of the material breach."

Subdivision (b) of section 1281.98 allows the employee or consumer to "unilaterally elect" any of several options if "the drafting party materially breaches the arbitration agreement and is in default" under subdivision (a). The employee or consumer may "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" (§ 1281.98, subd. (b)(1)), "[c]ontinue the arbitration proceeding, if the arbitration provider agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs" (§ 1281.98, subd. (b)(2)), "[p]etition the court for an order compelling the drafting party to pay all arbitration fees that the drafting party is obligated to pay under the arbitration agreement or the rules of the arbitration provider" (§ 1281.98, subd. (b)(3)), or "[p]ay the drafting party's fees and proceed with the arbitration proceeding" (§ 1281.98, subd. (b)(4)).

Subdivision (c) of section 1281.98 provides that if the employee or consumer withdraws the claim from arbitration and proceeds in court, he or she "may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding" (§ 1281.98, subd. (c)(1)), and the "court shall impose sanctions on the drafting party" in accordance with section 1281.99 (§ 1281.98, subd. (c)(2)).

Last, subdivision (d) of section 1281.98 provides that if the employee or consumer elects to continue arbitration, "the arbitrator shall impose appropriate sanctions on the drafting party, including monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions."

12

The California Legislature's enactment of Senate Bill No. 707 "was aiming to solve a very specific problem—namely, the ' "procedural limbo and delay" ' that consumers and employees face when they are ' "forced to submit to mandatory arbitration to resolve a[ ] . . . dispute," ' and the business or company that pushed the case into an arbitral forum then ' "stalls or obstructs the arbitration proceeding by refusing to pay the required fees." ' " (*Gallo, supra*, 81 Cal.App.5th at p. 634 [quoting legislative history].)  Addressing section 1281.97, the Court of Appeal in *Gallo* described the statute as "grant[ing] deliverance from this procedural purgatory by deeming late payment to be a material breach of the arbitral agreement" that gives the employee or consumer the choice to remain in the arbitration at the employer's cost or pursue his or her claims in court.  (*Gallo*, at p. 634.)

III.  **The trial court correctly ruled that Juanita's Foods was in material breach of the arbitration agreement**

Juanita's Foods argues the trial court misapplied section 1281.98 in granting De Leon's motion to vacate the order compelling arbitration.  It contends the California Legislature's purpose in enacting section 1281.98 was to prevent delay in arbitration proceedings, and that its late payment did not cause any delay here.

In support of its argument, Juanita's Foods emphasizes several facts.  It notes that Aerotek and Juanita's Foods timely paid the fees to initiate arbitration; that the parties selected an arbitrator and had begun scheduling proceedings; that counsel for Juanita's Foods informed JAMS on February 4, 2021, that Juanita's Foods was advised to pay the outstanding fees as soon as possible; that JAMS was initially willing to proceed with

13

scheduling an arbitration management conference even though Juanita's Foods's portion of the arbitration fees remained outstanding after the 30-day deadline; and that Juanita's Foods paid the outstanding fees shortly after the 30-day deadline.

Juanita's Foods further contends that if anyone is to blame for delay here, it is De Leon. It claims that De Leon required Aerotek and Juanita's Foods to compel arbitration instead of simply agreeing to arbitrate his claims, and that De Leon sought to vacate the order compelling arbitration even though Aerotek and Juanita's Foods, and initially JAMS, were willing to continue with arbitration proceedings.

Based on these contentions, Juanita's Foods claims the trial court erred by applying a "hyper-technical reading" of section 1281.98 that failed to account for whether its late payment caused delay or prejudiced De Leon. Notably missing from this argument, however, is an examination of the words of the statute, "the most reliable indicator of legislative intent." (*People v. Lopez, supra*, 31 Cal.4th at p. 1056.) Because we find the language of section 1281.98 clear and unambiguous, we reject this argument.

Section 1281.98 explicitly defines what occurs when "the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date," namely, that "the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach." (§ 1281.98, subd. (a)(1).) We find nothing in this language that is ambiguous regarding the requisite circumstances to determine the existence of a statutorily defined material breach of an arbitration agreement.

14

To the contrary, the statute's language establishes a simple bright-line rule that a drafting party's failure to pay outstanding arbitration fees within 30 days after the due date results in its material breach of the arbitration agreement.

Courts construing the similar provisions of section 1281.97 have reached that same conclusion. For example, in *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761 (*Espinoza*),[9] the Court of Appeal reversed the trial court's conclusion that a defendant's late payment of an arbitration provider's invoice was "in 'substantial[] compliance' with the arbitration agreement and 'not in material breach,' because the delayed payment was due to ' "clerical error," ' and the delay did not prejudice plaintiff." (*Id.* at p. 775.) The Court of Appeal concluded that the "language of section 1281.97 is unambiguous." (*Id.* at p. 776.) "Under the plain language of the statute, then, the triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the nondrafting party." (*Ibid.*) The court concluded that the "plain language therefore indicates the Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline."[10] (*Ibid.*)

---

[9] Because *Espinoza* was published after the briefing on appeal was completed in this case, we requested supplemental briefs from the parties addressing its impact, if any, on this case. We have read and considered the parties' briefs.

[10] The court in *Espinoza* found further support for its conclusion in the surrounding "statutory scheme" enacted by Senate Bill No. 707. (*Espinoza, supra*, 83 Cal.App.5th at p. 776.)

15

The Court of Appeal in *Gallo* reached a similar conclusion in rejecting an FAA preemption challenge to sections 1281.97 and 1281.98. In *Gallo,* the arbitration provider sent its invoice for initiation of arbitration to the defendant's counsel, but the defendant's counsel failed to pay the invoice within 30 days of its due date. (*Gallo, supra,* 81 Cal.App.5th at p. 631.) The trial court thereafter granted the plaintiff's motion to vacate the pending arbitration pursuant to sections 1281.97 and 1281.98. (*Id.* at p. 632.) On appeal, the defendant argued that those statutes "frustrated the arbitral proceedings," and thus were preempted by the FAA, because, among other things, there was no "showing that [the defendant] was to blame for the late payment or that plaintiff was prejudiced by it." (*Id.* at p. 644.) In addressing this argument, *Gallo* explained that "section 1281.97 declares any payment that exceeds the arbitration provider's deadline and a statutorily granted 30-day grace period to be a

---

The court noted that "[s]ection 1281.99 states that the court '*shall* impose a monetary sanction' in the event of a material breach under section 1281.97 (§ 1281.99, subd. (a), italics added), but the court '*may* order' additional nonmonetary sanctions 'unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust' (*id*., subd. (b), italics added)." (*Ibid*.) "Given the Legislature's express grant of discretion as to imposition of nonmonetary sanctions, we may presume the Legislature did not intend implicitly to grant that same discretion on the issues of material breach and imposition of monetary sanctions." (*Ibid*.) Because these same provisions of section 1281.99, subdivisions (a) and (b) apply equally to a material breach under section 1281.98, we find this reasoning applicable here.

16

material breach as a matter of law." (*Ibid.*, italics omitted.) The court further explained that section 1281.97 "statutorily defines a material breach as a matter of law to be failure to pay anything less than the full amount due by the expiration of the statutory grace period, rather than leaving materiality as an issue of fact for the trier of fact to determine." (*Ibid.*)

Because sections 1281.97 and 1281.98 share similar provisions, *Espinoza* and *Gallo* strengthen our conclusion that the trial court correctly construed section 1281.98 in determining that Juanita's Foods materially breached the arbitration agreement. That conclusion follows from the plain language of the statute and Juanita's Foods fails to explain otherwise.[11]

---

[11] In its reply brief and at oral argument, Juanita's Foods argued that the phrase "fees or costs *required to continue the arbitration* proceeding" in section 1281.98, subdivision (a)(1) is ambiguous. It further contends that because JAMS was initially willing to proceed with scheduling an arbitration management conference despite Juanita's Foods's failure to pay outstanding fees by January 4, 2021, such fees were not "required to continue" the arbitration. We reject this argument for two reasons. First, it was not clearly raised in Juanita's Foods's opening brief. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277–278; *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295 ["[W]e will not address arguments raised for the first time in the reply brief"].) Second, we do not find the phrase ambiguous. It refers to those fees and costs described in the preceding clause of section 1281.98, subdivision (a)(1), i.e., fees and costs imposed on a drafting party "during the pendency of an arbitration proceeding" required "either expressly or through application of state or federal law or the rules of the arbitration provider." Juanita's Foods does not dispute that JAMS set a due date of January 4, 2021, for its share of

Nor does Juanita's Foods direct our attention to any language in section 1281.98 that grants a trial court discretion to depart from the statute's straightforward material breach rule. Instead, Juanita's Foods maintains that the statute is "silent" regarding a trial court's discretion to consider factors such as prejudice or delay caused by the late payment of required arbitration fees. In the face of that purported silence, Juanita's Foods contends we should consider the public policy and legislative history of section 1281.98 to determine its appropriate application here.

We disagree. That section 1281.98 says nothing regarding a trial court's discretion to consider these additional factors reinforces our conclusion that the statute's 30-day deadline establishes a clear-cut rule for determining if a drafting party is in material breach of an arbitration agreement. (See *Espinoza, supra*, 83 Cal.App.5th at p. 776 [concluding that because the Legislature granted trial courts discretion elsewhere in statutory scheme enacted by Senate Bill No. 707 "we may presume the Legislature did not intend implicitly to grant that same discretion on the issue[] of material breach."].) Adopting Juanita's Foods's argument would thus be tantamount to re-writing section 1281.98 to create exceptions to the statutory definition of material breach where none exists. We lack that

_____

outstanding arbitration fees. Nor does Juanita's Foods explain what such fees were for if not for the purpose "to continue the arbitration proceeding." (See § 1281.98, subd. (a)(1).) We therefore conclude such fees were "required to continue the arbitration proceeding" within the meaning of section 1281.98, subdivision (a)(1), notwithstanding JAMS's brief willingness to overlook Juanita's Foods's nonpayment.

18

power.  (*Abbott Laboratories v. Franchise Tax Bd.* (2009) 175 Cal.App.4th 1346, 1360 ["This court has no power to rewrite the statute to make it conform to a presumed intention which its terms do not express."].)

If anything, in arguing a trial court should consider various factors in addition to a late payment to determine the existence of a drafting party's material breach under section 1281.98, Juanita's Foods turns the language of the statute on its head.  As noted, Juanita's Foods emphasizes that no prejudice occurred here in part because JAMS was initially willing to proceed with scheduling an arbitration management conference even though Juanita's Foods had yet to pay the overdue fees.  In rejecting this argument below, the trial court correctly observed that section 1281.98 accounts for this circumstance already, not by identifying it as a mitigating factor to weigh in determining the existence of a material breach, but by permitting an employee or consumer to continue with arbitration *notwithstanding* a material breach: Under subsection (b)(2), if the "drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may unilaterally elect to . . . [c]ontinue the arbitration proceeding, *if the arbitration provider agrees to continue administering the proceeding, notwithstanding the drafting party's failure to pay fees or costs*."  (§ 1281.98, subd. (b)(2), italics added.)  Juanita's Foods does not address, let alone reconcile, this inconsistency in its argument.

Because we reject Juanita's Foods's argument based on the plain language of section 1281.98, "we need go no further." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758.) Even so, we have reviewed the legislative history of Senate Bill No. 707, which added section 1281.98 to the CAA, and are

19

unconvinced that the legislative history supports Juanita's Foods's interpretation of the statute.

According to Juanita's Foods, the intent of the California Legislature in passing Senate Bill No. 707 was to prevent the party that drafted an arbitration agreement from delaying arbitration proceedings through nonpayment or late payment of required fees. To be sure, the legislative findings in support of the law emphasize that a "company's failure to pay the fees of an arbitration service provider in accordance with its obligations . . . hinders the efficient resolution of disputes and contravenes public policy," and that a "company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights," a particularly unfair result "when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes."[12] (Stats. 2019, ch. 870, §§ 1(c), (d).)

---

[12] See also Senate Rules Committee, Office of Senate Floor Analyses, third reading analysis of Senate Bill No. 707 (2019–2020 Reg. Sess.), as amended May 20, 2019, page 4 ["Recently, a concerning and troubling trend has arisen in arbitration: employers are refusing to pay required fees to initiate arbitration, effectively stymieing the ability of employees to assert their legal rights."]; Senate Committee on Judiciary, Analysis of Senate Bill No. 707 (2019–2020 Reg. Sess.), as amended April 11, 2019, page 9 [describing concern of California Employment Lawyers Association, one of bill's sponsors, that there is "a glaring loophole in this new era of mandatory arbitration: workers and consumers must submit to arbitration, while corporations may choose their forum by either submitting to arbitration or stalling the process back to court by refusing to pay fees."].

But it does not follow from this legislative history that section 1281.98 allows a trial court to weigh factors in addition to late payment—such as the degree of prejudice or delay caused by late payment—in determining the existence of a material breach under the statute.  Quite the opposite, the legislative history indicates the California Legislature sought a clear and unambiguous rule for courts to apply in determining whether late payment of arbitration fees by a drafting party constituted a material breach of an arbitration agreement.  (See *Espinoza*, *supra*, 83 Cal.App.5th at p. 777 [rejecting argument that reach of Senate Bill No. 707 was limited to circumstances involving strategic nonpayment of fees].)

"The California Legislature had a good reason for declaring untimely payment a material breach as a matter of law rather than leaving materiality a question of fact in this context: Employees and consumers were facing either the complete denial of any relief or delays in obtaining relief by virtue of the ' "perverse incentive" ' companies and businesses had to push claims into arbitration and then to refuse to pay the resulting arbitration fees; in such circumstances and to combat those incentives, the Legislature reasoned, *no* breach was immaterial to the stranded employee or consumer." (*Gallo*, *supra*, 81 Cal.App.5th at p. 644, quoting Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 8.)  Indeed, the California Legislature was concerned that "when the drafting party fail[ed] to properly pay for the arbitration, existing law [did] not provide the employee and customer with a clear means to redress their harms." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.), as amended May 20, 2019, p. 6.)  That problem

21

was fixed with the "material breach and sanction provisions" of the statute, which constitute a "strict yet reasonable method to ensure the timely adjudication of employee and consumer claims that are subject to arbitration." (*Id.* at p. 9; see also *Espinoza, supra*, 83 Cal.App.5th at p. 777 ["Although strict application may in some cases impose costs on drafting parties for innocent mistakes, the Legislature could have concluded a bright-line rule is preferable to requiring the nondrafting party to incur further delay and expense establishing the nonpayment was intentional and prejudicial."]) Applying section 1281.98's material breach provisions in a straightforward fashion, as the trial court did here, is therefore consistent with the statute's legislative purpose.[13]

---

[13] According to Juanita's Foods, the "Legislature, in drafting Senate Bill 707, did not anticipate a defendant eager to arbitrate against a recalcitrant Respondent; instead, it worried about only the opposite." We have doubts about whether this accurately describes the events here. For one thing, JAMS gave Juanita's Foods ample notice regarding the deadline for the fees in question. If Juanita's Foods was eager to arbitrate it would have paid those fees on time, or within 30 days of the due date, even if it was still resolving fee-sharing matters with Aerotek. Moreover, it does not appear that De Leon was recalcitrant. He submitted his arbitration claims to JAMS within a week of the trial court's order compelling arbitration. Nor can he be blamed for quickly seeking to pursue his claims in court after Juanita's Foods materially breached the arbitration agreement—he had a right to do so pursuant to section 1281.98, subdivision (b)(1).

22

In sum, we conclude the trial court did not err in ruling that Juanita's Foods materially breached the arbitration agreement by its late payment of required arbitration fees.[14]

---

[14] Juanita's Foods's remaining arguments lack merit. It complains that the trial court's ruling will allow De Leon's claims against Juanita's Foods to proceed in court, while his similar claims against Aerotek will proceed in arbitration, resulting in duplicative effort and waste of judicial resources. Even if this were correct, it is not sufficient to overcome the plain language of section 1281.98, which, as we have already described, compelled the trial court's ruling. Also, Juanita's Foods overlooks the trial court's order staying litigation against it pending the outcome of the arbitration proceedings against Aerotek. As the trial court found, that measure will minimize the potential for conflicting rulings on common issues of law or fact.

In its reply brief and in its supplemental brief addressing the impact of *Espinoza* on this case, Juanita's Foods also argues that only the arbitrator, not the trial court, had authority to determine whether Juanita's Foods materially breached the arbitration agreement pursuant to section 1281.98. We do not address this argument, which was raised for the first time in the reply brief. (*Gallo, supra*, 81 Cal.App.5th at p. 646 [declining to address argument that "whether [party] ran afoul of section 1281.97 was a question that should have been presented to the arbitrator, and not the trial court," where, among other things, it was "not brought to our attention until the reply brief"]; see also *Hernandez v. First Student, Inc., supra*, 37 Cal.App.5th at pp. 277–278; *Provost v. Regents of University of California, supra*, 201 Cal.App.4th at p. 1295.)

## DISPOSITION

The order granting De Leon's motion to vacate the order compelling arbitration as to Juanita's Foods is affirmed. De Leon is entitled to his costs on appeal.

**CERTIFIED FOR PUBLICATION**


EDMON, P. J.


We concur:


EGERTON, J.


RICHARDSON (ANNE K.), J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.